## CITY OF LYNN *vs.* LYNN POLICE ASSOCIATION.

No. 07-P-1090.

Essex. May 15, 2008. - January 9, 2009.

Present: McHUGH, DREBEN, & MILLS, JJ.

Further appellate review granted, 453 Mass. 1104 (2009).

*Lynn. Arbitration,* Judicial review, Authority of arbitrator. *Statute,* Construction. *Municipal Corporations,* Contracts, Collective bargaining. *Contract,* Performance and breach.

A Superior Court judge properly confirmed an arbitrator's award requiring a city to pay members of a police union certain back wages, where the city failed to demonstrate that the award, which was based on the city's breach of its contractual obligations under a memorandum of agreement with the union, was prohibited by the terms of a so-called "bailout bill," previously enacted by the Legislature when the city was on the verge of bankruptcy, which restricted spending on the city's personnel expenses. [493-495]
This court modified a Superior Court judgment in order to provide for declaratory relief, as requested by the complaint. [495-496]

CIVIL ACTION commenced in the Superior Court Department on January 13, 2006.

The case was heard by *Kathe M. Tuttman,* J.

*David F. Grunebaum* for the plaintiff.

*John M. Becker* for the defendant.

McHUGH, J. Appealing from a Superior Court judge's decision confirming an arbitrator's award requiring the city of Lynn (city) to pay members of the Lynn Police Association (union) certain back wages, the city asserts that the arbitrator exceeded his authority and committed an error of law. We disagree and affirm.

The dispute between the city and the union is rooted in a statute enacted in 1985 when the city was on the verge of bankruptcy and unable to meet financial obligations, including wage obligations under its collective bargaining agreements. To prevent bankruptcy, the city sought financial relief from the Com-

monwealth. In response, the Commonwealth enacted the so-called "Lynn Bailout Act" (bailout bill), see St. 1985, c. 8, under which it loaned the city $3.5 million but required the city to comply with certain financial safeguards to prevent spending in excess of revenues, the practice that had created the city's crisis.

The safeguards are rigorous. The bailout bill amended the city's charter to require, among other things, that each department head submit to the city's chief financial officer quarterly spending schedules, or allotments, within ten days after the mayor and city council set the department's annual appropriation. Under the amended charter, no department may overspend a quarterly allotment without the mayor's approval. If the mayor approves excess spending within a quarter, the department head must adjust the remaining quarterly allotments to ensure that future spending does not exceed the department's annual appropriation. See St. 1985, c. 8, § 3.

Under the charter as amended by the bailout bill, any city official who intentionally causes his or her department to overspend an appropriation is personally liable to the city for the excess. *Ibid.* Of most importance here, the charter, as amended by the bailout bill, provides that

> "[n]o personnel expenses earned or accrued, within any department, shall be charged to or paid from such department's . . . [quarterly] allotment of a subsequent period without approval by the mayor, except for subsequently determined retroactive compensation adjustments. Approval of a payroll for payment of wages, or salaried [*sic*] or other personnel expenses which would result in an expenditure in excess of the allotment shall be a violation of this section by the department or agency head . . . . If the continued payment of wages, salaries or other personnel expenses is not approved in a period where a department has exhausted the . . . allotment or allotments as specified above, or, in any event, if a department has exceeded its appropriation for a fiscal year, the city shall have no obligation to pay such personnel cost or expense *arising after such allotment or appropriation has been exhausted*" (emphasis added).

*Ibid.* Finally, § 3 of the bailout bill amended the city charter to provide that "every collective bargaining agreement entered into by the city . . . after the effective date of this act shall be subject to and shall expressly incorporate the provisions of this section." Accordingly, § 3 was set forth virtually verbatim in art. 40 of the collective bargaining agreement (CBA) in effect at the time the present dispute arose.

In fiscal year (FY) 2004, eighteen years after the bailout bill's enactment, the city was facing cuts in the amount of aid it was receiving from the Commonwealth and was considering police department personnel layoffs to deal with the shortfall. In October, 2003, to avoid layoffs, the union and the city entered into a "Memorandum of Agreement" (MOA), in which they temporarily modified certain terms of the then-existing CBA to reduce each employee's pay and to reduce certain allowances the CBA provided. Anticipating that financial assistance of some kind might be forthcoming from the Commonwealth or the Federal government, the MOA also provided that

> "[i]n the event . . . the City receives additional assistance from the State or Federal governments during FY 04 that improves the City's current financial situation the concessions [made by the union] shall be reconfigured proportionately to repay the officers up to the amount of the concessions. For example, if the concessions of this Agreement equal $300,000 and the City receives an additional $100,000 from the Commonwealth of Massachusetts, the concessions will be reconfigured to be reduced by 1/3."

The MOA saved the city $290,360 and layoffs were averted.

In December, 2003, shortly after the MOA took effect, the department received a community policing grant from the Massachusetts Executive Office of Public Safety (EOPS) in the amount of $277,815. In a finding not challenged here or in Superior Court, an arbitrator eventually ruled that the Lynn police chief

> "had broad discretion how to expend the . . . grant funds. The grant was not restricted to discrete law enforcement activities or equipment. So long as the funds were used for community policing initiatives, which all sworn personnel

in the Lynn Police Department participate in, there were no restrictions on how the funds could be used. For all practical purposes, the grant was unrestricted."

The arbitrator also found that the EOPS expressly prohibited police departments from using the community policing grant funds to "supplant" rather than "supplement" their budgets. In other words, the grant was designed to add to the funds allocated to the department for the fiscal year and not to replace a portion of the department's allocation so that the city could spend that portion elsewhere. Again, the city did not challenge that finding in the Superior Court and does not challenge it here. In any event, the city did not use the grant funds to repay the union members for concessions they had made in the MOA and, instead, used the money for other purposes.[1] In June, 2004, at the end of the fiscal year, $7,000 of the police department's allocation remained and the department used that sum to repay union members for a part of their MOA concessions.

The union became aware of the EOPS grant in February, 2004, and began discussions with the city about using the grant funds to end the MOA and restore concessions members had already incurred. The city declined and the union filed a grievance that led to arbitration hearings in August, 2005.[2] On December 19, 2005, the arbitrator ruled that the city had violated the MOA by failing to use the EOPS grant funds to repay the union members for their concessions and, as a result, was required to repay those concessions from other funds. Rejecting the city's argument that the bailout bill precluded repayment of the

---

[1] The grant money was spent in the following manner: $240,515 was used to match funds for two Federal community policing grants; $24,304 for overtime; $4,120 to replace personnel; $7,276 for cellular telephone charges; $1,000 for membership in the Massachusetts chiefs of police association; $300 for the police executive research forum; and $300 for the international association of chiefs of police.

[2] The parties designated the arbitrable issues as:

"Did the City of Lynn violate the 2001-2004 Contract and/or the October 1, 2003 Memorandum of Agreement when it failed to repay the concessions of the Memorandum of Agreement after receiving the Commonwealth of Massachusetts Executive Office of Public Safety grant money in Fiscal Year 2004?

"If so, what shall be the remedy?"

MOA concessions, the arbitrator ruled that the city was aware of the bill's strictures when it entered into the MOA and was therefore obliged to figure out how to repay the concessions without violating the bailout bill. The arbitrator's award was confirmed by a judgment entered in the Superior Court.

On appeal, the city contends that compliance with an award requiring retroactive repayment of the MOA concessions was prohibited by the bailout bill and that the award therefore exceeded the scope of the arbitrator's authority.[3] In addressing that contention, we keep in mind several principles. Paramount, perhaps, is that "[t]he role of courts in reviewing an arbitrator's award is limited." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187 (1984). "Where an arbitrator has exceeded his authority, however, his conduct is always open to judicial review." *Somerville* v. *Somerville Mun. Employees Assn.*, 418 Mass. 21, 24 (1994). "Those portions of an arbitrator's award which exceed the arbitrator's authority are void and may be vacated by a court." *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 392 Mass. 407, 411 (1984).

At first blush, the city's position seems attractive. The bailout bill's focus on personnel expenses, the firmness with which the bailout bill restricts overspending in that category, and the causes that led to the bailout bill's enactment all suggest a legislative intent to extinguish any governmental obligation to pay any personnel expenses that would exceed the amount of an annual appropriation no matter when and how the excess occurred.

Nevertheless, two considerations lead us to conclude that the judgment confirming the award was correct. The first focuses on the statutory language, which typically is the surest guide to what the Legislature truly intended. See, e.g., *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977) ("the statutory language itself is the principal source of insight into the legislative purpose"); *Middleborough* v. *Housing Appeals Comm.*, 449

---

[3]The city urges that the Superior Court judge erred not only by confirming the award but also by failing to address the city's claim for declaratory relief. When a complaint seeks declaratory relief, that relief must be afforded. *Boston* v. *Massachusetts Bay Transp. Authy.*, 373 Mass. 819, 829 (1977). We think that the nature of that relief is clear, and we address it at the end of this opinion.

Mass. 514, 523 (2007) ("we give paramount importance to the language of the act in order to determine legislative intent").

Here, as noted earlier, the bailout bill's operative language says that "if a department has exceeded its appropriation for a fiscal year, the city shall have no obligation to pay such personnel cost or expense *arising after such allotment or appropriation has been exhausted*" (emphasis added). St. 1985, c. 8, § 3. The city received the grant funds in December, 2003, midway through FY 2004, and its obligation to repay the MOA concessions arose at that point. There is no suggestion that the annual allotment had been exhausted, or was even close to exhaustion, when the repayment obligation arose. Accordingly, the literal terms of the bailout bill provide no defense to the union's claim.

The second consideration focuses on the way we and the Supreme Judicial Court have addressed similar, if slightly less onerous, statutory bars to payment elsewhere. In those cases, we have consistently held that statutory prohibitions on payment were no bar to an award of damages for breach of contract. In *Thomas O'Connor & Co.* v. *Medford*, 16 Mass. App. Ct. 10 (1983), for example, the statute at issue, G. L. c. 44, § 31, as appearing in St. 1946, c. 358, § 23, provided in part that "[n]o department financed by municipal revenue, or in whole or in part by taxation, . . . shall incur a liability in excess of the appropriation made for the use of such department." *Id.* at 12. A contractor that had agreed to build a high school brought suit against the city, claiming that deficiencies in the plans and other city actions caused it to incur substantial expenses over and above those anticipated. In appealing a Superior Court award of damages to the contractor, the city urged that the statute prohibited any award in excess of the amount appropriated for the school's construction. We rejected that argument, saying that, "[w]hile the contractor on a public construction contract must follow the procedures spelled out in the contract and cannot by labeling his claims a breach of contract unilaterally accrue expenses, . . . some claims do fall outside the contract, and because of the municipality's conduct constitute a 'true breach.' . . . Where that occurs, we do not think the term 'incur a liability' was intended to shield a municipality from liability for its wrongful actions." *Id.* at 13. See *Worcester* v. *Granger Bros.*,

19 Mass. App. Ct. 379, 388 (1985) ("[w]e have interpreted [G. L. c. 44, § 31,] to prohibit an arbitration award which exceeds the appropriation unless the municipality has committed a breach of contract") (emphasis omitted). See also *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 461 (1980).

The Supreme Judicial Court has drawn a similar distinction. In *Perseus of N.E., MA, Inc.* v. *Commonwealth*, 429 Mass. 163 (1999), one of the relevant statutes was G. L. c. 35, § 32, which provided that "[n]o county expenditures shall be made or liability incurred, nor shall a bill be paid for any purpose, in excess of the appropriation therefor." *Id.* at 165. Observing that "[t]he purpose of the statute[] was to keep county finances in check, not to shield the county from liability for its wrongful actions," *id.* at 166, the Supreme Judicial Court held that the statute did not bar claims for breach of contract. *Id.* at 167.

The MOA the city and the union entered into in this case was a contract. The contract required the city to return the MOA concessions to the union members when it received supplemental funds with which to do so. The arbitrator found that the city received those funds but elected to disburse them elsewhere. That was a breach of the city's contractual obligations. The bailout bill does not shield the city from liability for its breach simply because, by the time the arbitrator's award was entered, the city had spent elsewhere the money it was contractually bound to pay the union members.

In addition to seeking vacation of the award, the city sought a declaration that "payment of any funds, in the absence of an appropriation in the Police Department for FY '04 sufficient to fund the Award violates Chapter 8 of the Acts of 1985 and is void" and that the award "requires the City to violate the law, and is void." The judgment contained no declaratory relief, although it should have, for when a complaint requests declaratory relief, such relief must be granted. See, e.g., *Boston* v. *Massachusetts Bay Transp. Authy.*, 373 Mass. 819, 829 (1977). Accordingly, we order that the judgment be modified to declare that the arbitrator's award does not require the city to violate any law, and payment of that award will not violate chapter 8 of the Acts of 1985 because that statute does not prohibit payment

of awards for breach of contract. As so modified, the judgment of the Superior Court is affirmed.

*So ordered.*