## City of Lynn *vs.* Lynn Police Association.

Essex. October 8, 2009. - January 6, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Lynn. Arbitration,* Judicial review, Confirmation of award, Police, Authority of arbitrator. *Statute,* Construction. *Municipal Corporations,* Contracts, Collective bargaining. *Declaratory Relief.*

A Superior Court judge properly confirmed an arbitrator's award requiring the city of Lynn (city) to restore certain wages and benefits that the members of the city police union had earlier relinquished under a memorandum of agreement that modified the collective bargaining agreement between the parties on the condition that the city would restore the concessions if it received additional State or Federal funds, where the city received a grant of such additional funds to supplement the police budget, but did not use the additional funds to repay the concessions; and where the city would not, by complying with the arbitration award, violate the terms of the so-called Bailout Act, a State statute that imposed certain financial safeguards on city spending [596-598]; further, the arbitrator's award did not violate the terms of the Bailout Act and properly left to the city's discretion the manner of payment, rather than the question whether to pay the award [598-599].
This court modified a Superior Court judgment to provide for declaratory relief. [599]

Civil action commenced in the Superior Court Department on January 13, 2006.

The case was heard by *Kathe M. Tuttman,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David F. Grunebaum* for the plaintiff.

*John M. Becker* for defendant.

Ireland, J. We granted further appellate review to decide whether the arbitration award in this case should be vacated. In his award, the arbitrator ordered the city of Lynn to restore wages and other benefits voluntarily relinquished by the members

of the Lynn Police Association (union)[1] pursuant to a memorandum of agreement that modified the then-existing collective bargaining agreement between the parties. The city filed a complaint in the Superior Court requesting declaratory relief and seeking to vacate the arbitration award. The union filed an answer and a counterclaim requesting confirmation of the award. The city moved for summary judgment and the union moved for a judgment on the pleadings. A Superior Court judge denied the city's motion, allowed the union's motion, and entered a judgment confirming the award. The city appealed, and the Appeals Court essentially affirmed the judgment of the Superior Court (the Appeals Court ordered modification of the judgment to reflect a declaration of rights). See *Lynn* v. *Lynn Police Ass'n,* 73 Mass. App. Ct. 489, 495-496 (2009). On the grant of its application for further appellate review, the city argues that we vacate the award, contending that compliance with it would violate a State statute, namely, the so-called "Lynn Bailout Act," see St. 1985, c. 8 (Bailout Act), and that the arbitrator exceeded his authority in ordering payment to the union. For reasons different from those stated by the Appeals Court, we affirm.

*Background.* The parties do not dispute the relevant facts. As noted by the Appeals Court, "[t]he dispute between the city and the union is rooted in a statute [the Bailout Act] enacted in 1985 when the city was on the verge of bankruptcy and unable to meet financial obligations, including wage obligations under its collective bargaining agreements." *Lynn* v. *Lynn Police Ass'n,* *supra* at 489. To prevent a cessation of municipal services, the city requested a loan from the State. In response, the Legislature enacted the Bailout Act, "under which it loaned the city $3.5 million [interest-free] but required the city to comply with certain financial safeguards to prevent spending in excess of revenues, the practice that had created the city's crisis." *Id.* at 490.

The Appeals Court correctly summarized some of the safeguards of the Bailout Act:

"The [Bailout Act] amended the city's charter to require,

---

[1]The union represents all employees of the police department of Lynn save its chief and deputy chief.

among other things, that each department head submit to the city's chief financial officer quarterly spending schedules, or allotments, within ten days after the mayor and city council set the department's annual appropriation. Under the amended charter, no department may overspend a quarterly allotment without the mayor's approval. If the mayor approves excess spending within a quarter, the department head must adjust the remaining quarterly allotments to ensure that future spending does not exceed the department's annual appropriation. See St. 1985, c. 8, § 3.

"Under the charter as amended by the [Bailout Act], any city official who intentionally causes his or her department to overspend an appropriation is personally liable to the city for the excess. [*Id.*]"

*Lynn* v. *Lynn Police Ass'n, supra.*
    In addition, § 3 of the Bailout Act provides:

"On or before August first of each year . . . the city officials in charge of departments or agencies including the superintendent of schools for the school department, shall submit to the chief financial officer, with a copy to the city clerk, in such form as the chief financial officer may prescribe, an allotment schedule of the appropriations of all personnel categories included in said budget, indicating the amounts to be expended by the department or agency for such purposes during each of the fiscal quarters of said fiscal year . . . . Whenever said chief financial officer determines that any department or agency, including the school department, will exhaust or has exhausted its quarterly . . . allotment and any amounts unexpended in previous periods, he shall give notice in writing to such effect to the department head, the mayor, the city solicitor, and to the city clerk who shall forthwith transmit the same to the city council. . . .

"The mayor within seven days after receiving such notice, shall determine whether to waive or enforce such allotment. If the allotment for such period is waived or is not enforced, as provided above, the department or agency head shall reduce the subsequent period allotments appropriately. If the allotment for such period is enforced

or not waived, thereafter the department shall terminate all personnel expenses for the remainder of such period. . . .

"No personnel expenses earned or accrued, within any department, shall be charged to or paid from such department's . . . [quarterly] allotment of a subsequent period without approval by the mayor, except for subsequently determined retroactive compensation adjustments.[2] Approval of a payroll for payment of wages, or salaried or other personnel expenses which would result in an expenditure in excess of the allotment shall be a violation of this section by the department or agency head . . . . If the continued payment of wages, salaries or other personnel expenses is not approved in a period where a department has exhausted the period allotment or allotments as specified above, or, in any event, if a department has exceeded its appropriation for a fiscal year, the city shall have no obligation to pay such personnel cost or expense arising after such allotment or appropriation has been exhausted."

Last, § 3 requires all collective bargaining agreements executed after the effective date of the Bailout Act "be subject to" and "expressly incorporate the provisions of this section."

The city and union negotiated a collective bargaining agreement for the period July 1, 2001, through June 30, 2004 (CBA), that governed employment and compensation, and provided for binding arbitration of grievances.[3] As a result of a reduction of aid to the city from the State in fiscal year (FY) 2004 (June 30, 2003, through June 30, 2004), the city and union entered into a memorandum of agreement (MOA) on October 1, 2003, that temporarily and conditionally modified the CBA for FY 2004. Pursuant to the MOA, the union agreed to relinquish (in FY 2004 only) certain wages and benefits in the amount of $290,360 (concessions),[4] to avoid layoffs, on the condition that the city would restore the concessions if it received additional funds

---

[2]The city does not rely on this exception in seeking to vacate the arbitration award. In view of our conclusions, we need not interpret this provision.

[3]As required by the Bailout Act, § 3 of the Bailout Act essentially is set forth and incorporated into the collective bargaining agreement.

[4]Specifically, the union agreed to reduce wages for eight hours in one week,

from the State or Federal government.[5] The MOA saved the city $290,360, and there were no layoffs in the police department.

In December, 2003, the Lynn police department received a "community policing" grant in the amount of $277,815 from the Massachusetts Executive Office of Public Safety (EOPS) for FY 2004. Under the program, grant funds were to supplement, and not supplant, local police department budgets. While grant funds could only be used for "community policing," the funds could be used, at the discretion of the chief of police, to defray personnel costs; to defray costs of training law enforcement and civilian personnel; for overtime; for supplies, operating expenses, and equipment; and to defray other reasonable costs intended to facilitate or enhance community policing. In light of these permitted uses of the grant funds, the arbitrator concluded, and the city does not challenge this conclusion, that the grant "was for all intents and purposes unrestricted." Taking note of the fact that the FY 2004 budget was in place when the grant was received, and that there was no change in the budget as a result of the grant, the arbitrator further concluded (and, again, the city does not challenge this conclusion) that the grant funds were used to supplement the department's budget for FY 2004. The city did not use the grant funds to repay the union members for the

---

to waive payment of a certain "floating" holiday, to allow the school resource officers to be assigned to the patrol division, to waive payment of a $410 shooting allowance, to waive a $150 clothing allowance, and to relieve the police department of the requirement "to inverse hire for a third [s]ergeant."

[5]The MOA provided as follows:

"In the event of the following occurrences, the modifications made in this Agreement will immediately terminate and all terms, conditions and practices will return to those in existence prior to entering into this Agreement;

"If at any time during [FY] 2004 the [c]ity lays off any bargaining unit employee(s) or;

"If the [c]ity otherwise violates the terms and conditions of this Agreement.

"In the event that the [c]ity receives additional assistance from the State or Federal governments during FY 04 that improves the [c]ity's current financial situation the concessions of this Agreement shall be reconfigured proportionately to repay the officers up to the amount of these concessions. For example, if the concessions of this Agreement equal $300,000 and the [c]ity receives an additional $100,000 from the Commonwealth of Massachusetts, the concessions will be reconfigured to be reduced by 1/3.

"At the end of FY 2004, if the police department has unspent funds, those funds will be paid to the bargaining unit employees by equally dividing the funds to all bargaining unit employees . . . ."

MOA concessions, but did expend all the grant funds in FY 2004.[6]

The union became aware of the grant funds in February, 2004, and requested termination of the MOA and use of the grant funds to repay the MOA concessions. The city refused, and the union filed a grievance that led to the underlying arbitration proceeding.[7]

The arbitrator found that, by failing to restore the concessions to the union members after receiving the grant funds, the city had violated the MOA. He rejected the city's claim that restoring the concessions would violate the Bailout Act, noting that it would be up to the city to decide how to comply with the MOA without violating the Bailout Act. He ordered that the city "must comply with the [MOA] by repaying the bargaining unit employees up to the amount of the grant," and retained temporary jurisdiction to resolve any questions concerning the remedy.

The city, as noted, sought relief in the Superior Court, which was denied. The Superior Court judge entered a judgment confirming the arbitrator's award. Because the Superior Court judgment did not contain declaratory relief as sought by the city, the Appeals Court ordered "that the judgment be modified to declare that the arbitrator's award does not require the city to violate any law, and payment of that award will not violate [the Bailout Act] because that statute does not prohibit payment of awards for breach of contract." *Lynn* v. *Lynn Police Ass'n*, 73 Mass. App. Ct. 489, 495-496 (2009). The Appeals Court affirmed the judgment of the Superior Court as so modified. *Id.* at 496.

*Standard of review.* The familiar standard of review of arbitration awards is set forth in *Superadio Ltd. Partnership* v. *Winstar Radio Prods., LLC*, 446 Mass. 330, 334-335 (2006), quoting

---

[6]The department spent the grant funds as follows: $240,515 was used to match funds for two Federal community policing grants, $24,304 for overtime, $4,120 to replace personnel, $7,276 for cellular telephone charges, $1,000 for membership in the Massachusetts Chiefs of Police Association, $300 for the "Police Executive Research Forum," and $300 for the "International Association of Chiefs of Police."

[7]At the end of FY 2004, $7,000 remained in the police department's budget account. The city distributed these funds to union members in accordance with the MOA. See note 5, *supra* (pertaining to use of unspent funds in budget). This distribution only partially satisfied the MOA obligation.

*Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990):

> "Consistent with policy strongly favoring arbitration . . . an arbitration award is subject to a narrow scope of review. . . . The bases for review are set forth in G. L. c. 231, § 12. Judicial intervention is permitted where an award 'was procured by corruption, fraud or other undue means,' § 12 (*a*) (1), or where the 'arbitrators exceeded their powers,' § 12 (*a*) (3). 'An arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement . . . by awarding relief beyond that to which the parties bound themselves . . . or by awarding relief prohibited by law.' . . . 'Arbitration, it is clear, may not "award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision" . . . or otherwise transcends the limits of the contract of which the agreement to arbitrate is but a part.' " (Citations omitted).

*Discussion.* Some preliminary observations are in order. The city contends that this dispute arose, in part, out of disagreement concerning the confines of the grant funds. Understanding that our review is very narrow, the city conceded during oral argument that it is bound by the arbitrator's determinations that the grant funds were unrestricted and that use of the funds to satisfy the MOA obligation would have "supplemented" and not "supplanted" the police department's budget. Accordingly, because the city received unrestricted grant funds from the State that were unforeseen, that were not included in its FY 2004 budget, and that improved its financial condition by $277,815, the repayment obligation in the MOA was triggered. That the repayment obligation in the MOA was triggered is not in dispute. Also not in dispute is the fact that the city breached the repayment obligation under the MOA, and that in fulfilling its repayment obligation, the terms of the Bailout Act cannot be violated. It is this latter issue, whether the city must necessarily violate the Bailout Act in complying with the arbitration award, that is before us.

a. *Violation of the Bailout Act.* The city's principal argument is that it cannot comply with the arbitration award because pay-

ment of the MOA concessions would violate the Bailout Act. The city contends that, whether the grant funds were restricted or unrestricted, it cannot comply with the arbitration award because § 3 of the Bailout Act requires an appropriation before an expenditure may be made, and here, there was no such appropriation. The city further asserts that the Bailout Act "relieves" it from "any obligation to fund retroactive personnel costs."[8]

We have not had occasion to construe the provisions of the Bailout Act on which the city relies. We conclude that, as relevant here, § 3 of the Bailout Act does not apply because it does not pertain to a potential expenditure of a city department that is contractually conditioned on being financed from funds received separate from and in excess of that department's budget. Several considerations compel our conclusion.

"Where the language of a statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Gurley* v. *Commonwealth*, 363 Mass. 595, 598 (1973). Section 3 of the Bailout Act, as relevant here, pertains to expenses, allotments, and appropriations "included in [the police department's] budget."[9] By its own unambiguous terms, § 3 of the Bailout Act is limited in scope.

Here, the MOA obligation could only be satisfied from the police department's budget if the department had unspent funds at the end of the fiscal year, see notes 5 and 7, *supra.* As noted, the police department's unspent funds only partially satisfied the MOA obligation, and thus, this circumstance has no further bearing in this case.

Apart from the occurrence of unspent funds, the sole manner of satisfying the MOA obligation depended on the police department's receipt of "additional assistance," here the grant funds. Significantly, these funds would be and were separate

---

[8]The city relies on the following language in § 3 of the Bailout Act: "[I]f a department has exceeded its appropriation for a fiscal year, the city shall have no obligation to pay such personnel cost or expense arising after such allotment or appropriation has been exhausted."

[9]Section 3 of the Bailout Act first limits its application to expenses, allotments, and appropriations. The MOA obligation was not an expense included in the police department's FY 2004 allotment schedules, and there was no appropriation made for it. The MOA obligation was a conditional contractual undertaking.

from, and in excess of, the police department's budget. Thus, satisfaction of the MOA obligation with the grant funds would *not* create a debt or liability chargeable *to the police department's budget* and is not a matter contemplated under the Bailout Act. Further, no violation of § 3 of the Bailout Act could have resulted from the funding of the MOA obligation in this manner, that is, with the grant funds, because nothing in § 3 required an appropriation to spend funds that were not part of the police department's budget.

Our conclusion does not contravene the clear intent of the Legislature in enacting the Bailout Act. See *Commonwealth* v. *Rahim,* 441 Mass. 273, 278 (2004). The Bailout Act serves to prevent irresponsible municipal spending by department heads and to secure financial stability for the city. See St. 1985, c. 8, §§ 1, 3, 4, 5. The MOA obligation was not a result of irresponsible overspending by a department head; rather, the obligation arose out of good faith contractual dealings between the union and the city in attempt to avert a fiscal crisis. Because the union at no time acted to impose a financial obligation on the police department that would adversely affect its own budget or the city (on account of satisfying the obligation only with unspent budget funds and with the grant funds), the MOA obligation was not at odds with the legislative purposes of the Bailout Act.

The city's argument concerning a prohibition under § 3 of the Bailout Act to fund retroactive personnel costs similarly fails. The language on which the city relies, see note 8, *supra,* does not pertain to conditional contractual expenditures to be financed by funds outside of, and not part of, the police department's budget.

b. *Remedy.* It should first be noted that the city erroneously contends that the arbitrator directly awarded it "to appropriate money." The award does not require an appropriation; it instead orders compliance with the MOA obligation "by repaying the bargaining unit employees up to the amount of the grant." We reject the city's contention that the arbitrator exceeded his authority in entering this order on the ground that the order violates § 3 of the Bailout Act. As previously discussed, § 3 of the Bailout Act does not speak to or concern conditional contractual expenditures to be made from funds received by a city depart-

ment separate from, and in excess of, its budget. The arbitrator's order is therefore not invalid and, in keeping with general principles of avoiding interference with municipal managerial prerogative, see *Massachusetts Coalition of Police, Local 165* v. *Northborough,* 416 Mass. 252, 255 (1993), appropriately leaves the manner of payment (but *not* the question whether to pay) to the city's discretion.[10]

c. *Declaratory relief.* In its complaint filed in the Superior Court, the city sought two declarations: (1) "that the payment of any funds, in the absence of an appropriation in the [p]olice [d]epartment for FY 04 sufficient to fund the [a]ward violates [the Bailout Act]," and (2) "that the [arbitration award] requires the [c]ity to violate the law, and is void." The union does not contend that the city's request for declaratory relief was improperly brought. In a properly brought action for declaratory relief, there must be a declaration of the rights of the parties even though relief is denied to a plaintiff. *Cherkes* v. *Westport,* 393 Mass. 9, 12 (1984). *Boston* v. *Massachusetts Bay Transp. Auth.,* 373 Mass. 819, 829 (1977). Accordingly, while we affirm that portion of the judgment of the Superior Court affirming the arbitrator's award, the judgment is to be modified to declare that the arbitrator's order does not violate the Bailout Act and does not require the city to violate the Bailout Act.

*So ordered.*

---

[10]Indeed, the city conceded during oral argument that the mayor is not prohibited from asking the city council for the money to satisfy the MOA obligation.