NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-742                                    Appeals Court

CITY OF SPRINGFIELD  vs.  UNITED PUBLIC SERVICE EMPLOYEES UNION.

No. 15-P-742.

Hampden.    February 11, 2016. - March 25, 2016.

Present: Kafker, C.J., Rubin, & Agnes, JJ.


Arbitration, Collective bargaining, Authority of arbitrator,
      Judicial review. Employment, Sexual harassment,
      Termination. Public Policy. Public Employment, Collective
      bargaining, Termination, Reinstatement of personnel. Civil
      Service, Termination of employment, Reinstatement of
      personnel.



      Civil action commenced in the Superior Court Department on
January 2, 2014.

      The case was heard by John S. Ferrara, J.


      Gordon D. Quinn for the plaintiff.
      Lan T. Kantany for the defendant.


      KAFKER, C.J.  The issue presented is whether an arbitrator

exceeded her authority when she ordered a terminated employee

reinstated without loss of pay or other rights, even though she

found that he had engaged in conduct amounting to sexual

harassment.  Because the mitigating circumstances the arbitrator identified supported her determination that the employer lacked just cause for termination, and her order does not preclude appropriate remedial action to address the employee's sexual harassment, we conclude that her award does not offend public policy or require a result prohibited by statute.  We therefore affirm the Superior Court judge's decision confirming the validity of the award.

1.  Background.  The city of Springfield (city) discharged Gregory Ashe, a long-time employee, following an investigation and hearing after a coworker complained of sexually inappropriate conduct.  Ashe, through his union, grieved the city's decision to terminate his employment.  Pursuant to the parties' collective bargaining agreement (CBA), the case was submitted to an arbitrator.  The parties presented the following question:  "Was the termination of the Grievant Gregory Ashe supported by just cause?  If not, what shall be the remedy?"  After two days of hearings, the arbitrator issued her award.  She determined that much of the alleged harassing conduct did occur, but found that mitigating circumstances meant there was not just cause for termination.  She concluded:  "As a remedy, the Grievant is entitled to be reinstated to his position without loss of compensation or other rights."

The city sought to vacate the award in the Superior Court under G. L. c. 150C, § 11.  In its appeal, the city argued that the arbitrator exceeded her authority under the CBA by reinstating the employee in direct violation of the public policy and statutory requirements governing sexual harassment. The judge, in a written decision, resolved the case on opposing dispositive motions, denying the city's appeal and affirming the award.

The arbitrator's award.  The evidence before the arbitrator and the facts as she found them are as follows.  The grievant, Gregory Ashe, is a twenty-two year employee of the Springfield office of housing (housing office), where he worked as a messenger, answering telephones and making deliveries.  Ashe was a member of the United Public Service Employees Union (union), the collective bargaining unit, at the time of his discharge. Prior to his discharge, he had a "blemish-free employment" record with no disciplinary history.

The arbitrator found that the forty-three year old Ashe has significant physical and mental health problems.  He suffers from cerebral palsy, epilepsy, and depression.  Clinical evaluators determined that Ashe has a "mildly impaired overall [intelligence quotient] of 74."

The city based its decision to terminate Ashe on an incident occurring on December 12, 2012.  On that date, Ashe was

working at the main desk in the housing office. He received a telephone call that apparently upset him, and he went into Keleigh Waldner's office with a "red face." Waldner is another employee of the housing office, and she regularly interacted with Ashe throughout the course of their employment. That interaction included his bringing her food and gifts and following her around the office. He was described as having a "crush" on her. The arbitrator found, by a preponderance of the evidence, that he

> "told Waldner that 'the fucking pussy called again,' asked Waldner about the meaning of the word 'pussy [after she had previously told him not to use such language],' referenced 'not getting any,' grabbed his crotch on the outside of his pants, put his hand inside his pants, started to unbuckle his belt, and said 'sorry babe' as Waldner exited the room."

Geraldine McCafferty, the city's director of housing and Waldner's supervisor, testified during the arbitration hearing that Waldner was crying and upset after her encounter with Ashe. She also testified that Ashe told her minutes after the encounter that he had done "something bad."

The arbitrator, in her factual findings, credited Waldner's account of the event in question and found Ashe's "blanket denials . . . unpersuasive, and self-serving." The arbitrator further found that "[w]hile [Ashe's] actions may have been extremely upsetting to Waldner, she was aware of [Ashe's] mental and physical challenges."

The arbitrator concluded that Ashe's conduct "was a single, short-lived episode of anti-social behavior by an employee who posed no reasonable threat to others." She determined that his conduct was "caused by lack of medication and profound depression and explained, in part, by developmental delays." She also concluded that Ashe's "pliant demeanor makes him an appropriate candidate for progressive discipline." The arbitrator concluded that Ashe's termination "was an excessive reaction in light of [his] long and problem-free work history and his developmental delays."

Finally, the arbitrator determined that Ashe was subjected to disparate treatment. The city had declined to terminate another employee who had, according to the arbitrator, "engaged in a six-month course of sexual harassment directed at a co-worker" and received only a reprimand.

2. Discussion. "Consistent with policy strongly favoring arbitration . . . an arbitration award is subject to a narrow scope of review." Lynn v. Lynn Police Assn., 455 Mass. 590, 596 (2010), quoting from Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). We uphold an arbitration award even if "it is wrong on the facts or the law, and whether it is wise or foolish, clear or ambiguous." Boston v. Boston Police Patrolmen's Assn., 443 Mass. 813, 818 (2005).

We do, however, vacate an award if "[a]n arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement . . . or by awarding relief prohibited by law.  Arbitration, it is clear, may not award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision." Lynn Police Assn., supra (quotations omitted).  See G. L. c. 150C, § 11(a)(3), inserted by St. 1959, c. 546, § 1 ("Upon application of a party, the superior court shall vacate an award if . . . the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law").

The city contends that the arbitrator erred in two respects.  First, the city contends that the arbitrator violated public policy in not upholding the employee's termination.  Second, the city argues that the arbitrator's remedy -- full reinstatement without loss of compensation or any other rights -- thereby precluded the city from taking remedial action required by the State and Federal law governing sexual harassment.  The union disagrees with both contentions, arguing that termination was not required on these facts and that the arbitrator's award does not leave the city without the authority to order appropriate remedial action such as counseling or training to address and correct the employee's misconduct.  We

agree that termination is not required here and accept the union's position that the city retains the right and responsibility to order counseling and/or training to address the employee's sexual harassment.

We first address the city's contention that the award violates public policy. "There is a three-pronged test we apply to determine whether public policy requires the court to vacate an arbitrator's award that has ordered the reinstatement of a public employee." Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 451 Mass. 698, 700 (2008). First, the public policy must be well defined and dominant, and determined from laws and legal precedents, not general consideration of the public interest. Massachusetts Hy. Dept. v. American Fedn. of State, County & Mun. Employees, 420 Mass. 13, 16 (1995). Second, the "disfavored conduct" must be "integral to the performance of employment duties." Id. at 17 (quotation omitted). Third, the employee's conduct, as found by the arbitrator, must have required dismissal, and a lesser sanction would frustrate public policy. Boston Police Patrolmen's Assn., 443 Mass. at 818-819. If all three parts of the test are satisfied, the award violates G. L. c. 150C, § 11(a)(3). See Sheriff of Suffolk County, supra at 700-701.

The first two requirements are satisfied here. First, Massachusetts maintains a well-defined and dominant public

policy disfavoring sexual harassment, as is evident from the statute prohibiting it and the case law applying the statute. See College-Town, Div. of Interco, Inc. v. Massachusetts Commn. Against Discrimination, 400 Mass. 156, 162 (1987); Melnychenko v. 84 Lumber Co., 424 Mass. 285, 290 (1997).  We also conclude that Ashe's conduct, as determined by the arbitrator, constitutes sexual harassment prohibited by Massachusetts law and public policy.

The union makes much of the fact that the arbitrator did not explicitly find that Ashe's conduct amounted to sexual harassment.  We reject the union's argument.  Courts need not look for specific legal labels to determine if the arbitrator's findings constitute prohibited conduct.  See, e.g., School Dist. of Beverly v. Geller, 435 Mass. 223, 231 (2001) (finding that employee engaged in conduct unbecoming teacher despite award's lack of specific language to that effect, based on findings made in award).  We conclude that the facts the arbitrator found here constitute sexual harassment.  Despite his physical and mental limitations, Ashe approached a woman who was the focus of his attentions -- a "crush" in the words of one witness -- and grabbed his crotch, put his hand inside his pants, and started unbuckling his belt while referring to the fact that he was "not getting any."  This constitutes sexually harassing conduct.  See Melnychenko, supra at 290 ("any physical or verbal conduct of a

sexual nature which is found to interfere unreasonably with an employee's work performance through the creation of a humiliating or sexually offensive work environment can be sexual harassment under G. L. c. 151B"). The woman he harassed was understandably upset and concerned despite her knowledge of Ashe's physical and mental limitations.

Second, the conduct at issue here is integral to Ashe's job duties. His work as a messenger requires him to interact with countless other city employees, both in person and over the telephone. His inappropriate remarks and physical gestures were precisely the kind of offensive workplace interaction the policy against sexual harassment seeks to prevent. See Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 65-67 (1986); College-Town, supra at 162 (explaining policy rationale for prohibition of sexual harassment that results in hostile work environment).

Nevertheless, the third element of the public policy exception is not met on the record before us. Ashe's conduct here, as found by the arbitrator, did not require dismissal because a lesser sanction, progressive discipline, would not violate public policy. In light of her findings regarding his significant mental and physical limitations, his pliant demeanor, and his twenty-two year problem-free work history, Ashe's misconduct, despite its severity, did not require termination. It was within the arbitrator's ample authority to

conclude that these factors made progressive discipline rather than termination an appropriate remedy.  The CBA, which she interpreted, incorporates the city's sexual harassment policy, and clearly contemplates progressive discipline; both parties stipulated to the city's long history of using progressive discipline.  We therefore do not agree with the city that public policy requires termination on these facts.  Compare Massachusetts Hy. Dept., supra at 20-21 (public policy implicated but did not require termination), and Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 606 (2000) (public policy did not require dismissal of two employees who used investigatory access to view tax records of local celebrities not under investigation), with Boston Police Patrolmen's Assn., supra at 819 (public policy required discharge of police officer who "falsely arrested two individuals on misdemeanor and felony charges, lied in sworn testimony and over a period of two years about his official conduct, and knowingly and intentionally squandered the resources of the criminal justice system on false pretexts").

We next turn to the city's second argument:  whether the arbitrator's full reinstatement award, without loss of compensation or other employment rights, violated statutory requirements in G. L. c. 151B and Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2012) (Title

VII), mandating that sexual harassment be addressed and corrected. As the Supreme Judicial Court has explained, "[a]rbitration . . . may not 'award relief of a nature . . . which directs or requires a result contrary to express statutory provision.'" Lawrence v. Falzarano, 380 Mass. 18, 28 (1980), quoting from Eager, The Arbitration Contract and Proceedings § 121.6 (1971).

We agree with the city that its authority to take corrective action against Ashe was substantially limited by the award, and that additional suspension, loss of pay, or loss of other employment rights for the December 12, 2012, incident would violate "industrial double jeopardy" provisions. See Zayas v. Bacardi Corp., 524 F.3d 65, 69 (1st Cir. 2008) (once initial sanction is final, subsequent sanction would violate industrial double jeopardy principles); Elkouri & Elkouri, How Arbitration Works ch. 15.3.F.vii (7th ed. 2012). We do not, however, for the reasons explained below, interpret the award to preclude appropriate remedial action required by statute, including training and counseling, to address Ashe's sexual harassment.

General Laws c. 151B requires an employer to take some remedial action in cases of confirmed sexual harassment. See College-Town, supra at 162 (employer who is notified of sexual harassment in workplace and fails to take adequate remedial

action violates G. L. c. 151B, § 4); <u>Modern Continental/Obayashi</u> v. <u>Massachusetts Commn. Against Discrimination</u>, 445 Mass. 96, 104-108 (2005) (holding that employer who failed to take remedial action could be held liable for sexual harassment of employee by subcontractor's employees); <u>Trinh</u> v. <u>Gentle Communications, LLC</u>, 71 Mass. App. Ct. 368, 376 (2008) ("An employer may be found directly liable for discrimination under G. L. c. 151B, § 4, if it is notified of sexual harassment in its workplace and fails to take adequate remedial action").  See also Massachusetts Commission Against Discrimination Guidelines: Sexual Harassment in the Workplace § VI.6 (2002) ("When an employer concludes that sexual harassment has occurred, the employer must take prompt remedial action designed to end the harassment and prevent future harassment.  What constitutes appropriate remedial action depends upon the circumstances").

Title VII similarly requires employers to take remedial action when they become aware that one of their employees has engaged in sexual harassment.  See 42 U.S.C. § 2000e; <u>Faragher</u> v. <u>Boca Raton</u>, 524 U.S. 775, 807 (1998) (holding that employers are vicariously liable for harassment of employees unless employer "exercised reasonable care to <u>prevent and correct promptly</u> any sexually harassing behavior" [emphasis supplied]). See also 29 C.F.R. § 1604.11(d) (1999) (imposing responsibility on employer for Title VII violations if it "knows or should have

known of the conduct, unless it can show that it took immediate and appropriate corrective action").

We thus recognize that an arbitration award that precluded the city from addressing and correcting Ashe's sexual harassment might violate the State and Federal statutes. The arbitrator here, however, did not expressly go that far. We also interpret the arbitrator's decision as avoiding such a statutory violation. Cf. Starr v. Fordham, 420 Mass. 178, 192 (1995), quoting from Restatement (Second) of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning . . . is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); Lynn Police Assn., 455 Mass. at 599 ("The arbitrator's order is therefore not invalid and, in keeping with general principles of avoiding interference with municipal managerial prerogative, appropriately leaves the manner of payment . . . to the city's discretion" [citation omitted]). The union does not argue that the award prohibits all measures that would satisfy the statutory remediation requirement here.[1] The union contends (and

---

[1] Our conclusion that her award did not directly violate statutory requirements does not suggest that we agree with the arbitrator's resolution of the matter without loss of compensation or other employment rights, as "even our strong disagreement with the result [would] not provide sufficient grounds for vacating the arbitrator's award." Bureau of Special Investigations, 430 Mass. at 606.

concedes) that the city remains free, for example, to provide Ashe with counseling and training regarding his sexual harassment.  In the absence of any argument to the contrary, we conclude that providing such required counseling and training does not constitute a loss of employment rights in violation of the arbitration award.[2]  We therefore interpret the award as preserving these rights and responsibilities and avoiding a result contrary to G. L. c. 151B and Title VII's requirements mandating appropriate actions to address and prevent sexual harassment.

We affirm the Superior Court decision confirming the arbitration award.

So ordered.

---

[2] Indeed, at oral argument, as well as in its brief, the union referenced the city's sexual harassment policy, integrated through art. 6 of the CBA, which appears to contemplate corrective action that would not necessarily be considered discipline.