# United States Court of Appeals
## For the First Circuit

No. 07-1950

PABLO ZAYAS ET AL.,

Plaintiffs, Appellants,

v.

BACARDI CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Senior Circuit Judge,
and Keenan,[*] Senior District Judge.

Víctor Bermúdez Pérez, with whom Robert Millán was on brief, for appellants.
Pedro J. Manzano-Yates, with whom Ada Nurie Pagán-Isona and Fiddler González & Rodríguez, PSC were on brief, for appellee.

April 18, 2008

---

[*]Of the Southern District of New York, sitting by designation.

**SELYA**, **Senior Circuit Judge**.  This appeal invites us to enter terra incognita and consider an esoteric area of labor relations law: the doctrine of industrial double jeopardy.  From what we can tell, the pertinent case law consists of a handful of district court opinions.  See, e.g., Int'l Longshoremen's Ass'n v. S.S. Trade Ass'n of Balt., Inc., Civ. No. 00-3693, 2001 WL 777080, at *3-4 (D. Md. July 3, 2001); Local Union No. 1 v. Interstate Brands Corp., No. 99-C-2522, 2000 WL 126798, at *2 (N.D. Ill. Feb. 1, 2000); Yager v. Carey, 910 F. Supp. 704, 716 (D.D.C. 1995).  No federal appellate court has addressed the doctrine.

The question arises here in the context of an arbitral award.  The arbitrator overrode the employee's double jeopardy argument without comment and the district court followed suit.  We take a more direct approach, briefly exploring the parameters of the doctrine and concluding that the failure to invoke it did not constitute a manifest disregard of the law.  Consequently, we uphold the judgment below (and, thus, confirm the arbitral award).

We rehearse the facts as supportably found by the arbitrator.  Pablo Zayas worked for Bacardi Corporation as a distillery operator.  He also served as a vice-president of United Auto Workers, Local 2415 (the Union).  During the times material hereto, a collective bargaining agreement (the CBA) was in effect between Bacardi and the Union.

Zayas requested that his attendance register be altered to reflect that he had worked on October 17, 2002. Suspecting that Zayas had not worked on that date and was trying to take undue advantage, Bacardi suspended him without pay for three days (October 22-24) in order to investigate. Its suspicions confirmed, the company terminated Zayas's employment on the fourth day.

Zayas and the Union challenged the dismissal. In due course, the grievance was submitted to arbitration as prescribed by the CBA. After taking testimony and entertaining argument, the arbitrator issued an award upholding the firing. In his written rescript, the arbitrator found that Zayas had tried to alter his work record to reflect (falsely) that he had worked on October 17, thereby violating a valid workplace rule.

With respect to the penalty imposed, the arbitrator found that Bacardi had followed a policy of progressive discipline and, thus, that this most recent violation could be evaluated in light of Zayas's prior, similar infractions. That cumulative record, the arbitrator ruled, entitled Bacardi to discharge Zayas for the latest infraction.

The award did contain a small victory for Zayas: the arbitrator found that his suspension without pay was contrary to the CBA and, thus, was unjustified. Even though Bacardi had imposed the suspension for the purpose of investigating Zayas's alleged chicanery, that was not enough. In the arbitrator's words,

-3-

"it was also up to [Bacardi] to prove that just cause existed" for the suspension, and Bacardi had not "satisfactorily compl[ied] with the burden of proving that the suspension . . . was justified." Thus, the arbitrator awarded Zayas back pay for the three-day interval.

Zayas sought judicial review of the arbitral award in a local court (the Puerto Rico Court of First Instance).[1] There, he proffered three claims of error: (i) the dismissal itself was an improper form of industrial double jeopardy; (ii) the arbitrator failed correctly to apply the presumption of just cause; and (iii) the arbitrator's finding that Bacardi had in place a valid system of progressive discipline was wrong. Bacardi removed the case to the federal district court, see 28 U.S.C. § 1441; 29 U.S.C. § 185(a), and in due season moved for summary judgment, see Fed. R. Civ. P. 56(b).

The district court, in an unpublished memorandum opinion, granted the motion. The court noted the arbitrator's determinations that Zayas had provided false information to the company, that this behavior violated a workplace rule, that the rule itself was a rational means of ensuring the orderly functioning of the plant, and that the ensuing dismissal was a legitimate exercise of the company's system of progressive

_____

[1]Although the Union and Zayas are co-plaintiffs, the Union is strictly a nominal party. Hence, we refer throughout to Zayas as if he were the sole plaintiff.

-4-

discipline. It perceived no manifest disregard of the law or other cognizable shortcoming in any of these determinations.

This timely appeal followed. In it, Zayas has preserved only a single ground of appeal: the claim that his dismissal was antithetic to principles of industrial double jeopardy.

We review a district court's entry of summary judgment de novo. See, e.g., Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). In this case, that means that, in appraising the arbitral award, we are bound by the same standards that bound the district court. See Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 237 (1st Cir. 2006); Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 65 (1st Cir. 2000). Those standards are not challenger-friendly. Judicial review of arbitral awards operates in very narrow, tightly constricted confines and, thus, "[a]rbitral awards are nearly impervious to judicial oversight." Supervalu, 212 F.3d at 61. This result flows naturally from a recognition that the "federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960).

Hedged in by these constraints, federal courts limit their review of arbitral awards to two well-delineated tranches. In the first, courts are statutorily authorized to review the arbitral process for certain specific types of breakdowns (say,

-5-

fraud, partiality on the arbitrator's part, or the like).  See 9 U.S.C. § 10(a); see also Cytyc Corp. v. Deka Prods. Ltd. P'ship, 439 F.3d 27, 33 (1st Cir. 2006).  That traunch is not implicated here.

The second traunch is anchored in federal common law. See Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220-21 (2d Cir. 2002); Advest, Inc. v. McCarthy, 914 F.2d 6, 9 n.5 (1st Cir. 1990).  That traunch provides an exceedingly small window of opportunity for vacation of arbitral awards that are "in manifest disregard of the law."  Advest, 914 F.2d at 8-9 (collecting different formulations of this standard).  Access to this window of opportunity requires that an award be "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact."  Supervalu, 212 F.3d at 66 (quoting Local 1445, United Food & Comm'l Workers Int'l Union v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir. 1985)).

Zayas's argument implicates the second traunch of review. He contends, in substance, that by impliedly rejecting his industrial double jeopardy claim, the arbitrator acted in manifest disregard of the law.  This is a heavy burden; to succeed on such a contention, a challenger ordinarily must show that "the arbitrator recognized the applicable law — and then ignored it."

-6-

<u>Advest</u>, 914 F.2d at 9. We understand Zayas's remonstrance to be a slight variation on this theme; in his view, the principles of industrial double jeopardy are so clear and the arbitral award so inconsistent with them that the arbitrator must have thumbed his nose at the law.

The phrase "industrial double jeopardy" refers to one of a family of concepts that fall under the rubric of industrial due process. <u>See</u> 1 Tim Bornstein et al., <u>Labor & Employment Arbitration</u> § 15.01 (2d ed. 1997); Ray J. Schoonhoven, <u>Fairweather's Practice & Procedure in Labor Arbitration</u> § 13, at 374 (4th ed. 1999). In the arbitral context, these protections are not normally of constitutional dimension. Rather, when an arbitrator refers to double jeopardy or some similar due process concept, he generally has imported that concept into a CBA.

The impetus is that such an importation is intrinsic to the notion of just cause or otherwise implicit in the labor contract.[2] <u>See</u> 1 Bornstein, <u>supra</u> § 15.03; Schoonhoven, <u>supra</u> § 13, at 373. This borrowing does not mean, however, that the borrowed concepts play out identically in the constitutional and industrial spheres. The concept of industrial double jeopardy, for

---

[2]As a theoretical matter, it is unclear whether parties to a CBA may avoid the importation of industrial due process protections into their contractual relationship by explicitly contracting away such protections. <u>See</u> Schoonhoven, <u>supra</u> § 13, at 373. We need not resolve that uncertainty, however, as no such waiver occurred here.

example, is usually considered weaker and narrower than its constitutional counterpart.  See Schoonhoven, supra § 13.VIII, at 417-18.

The double jeopardy claim in the instant case runs along the following lines.  Zayas says that by being dismissed after having been suspended without pay he suffered two distinct disciplinary sanctions for the same conduct.  As he sees it, the fact that the unpaid suspension was undertaken to afford breathing room for conducting an investigation into the suspected wrongdoing is irrelevant; what counts is that it was a disciplinary sanction (as the arbitrator himself found).  Since the dismissal punished the same conduct for a second time, his thesis runs, that action contravened the doctrine of industrial double jeopardy.  Therefore, it should not have been upheld.

Zayas's basic legal premise is generally correct.  The doctrine of industrial double jeopardy enshrines the idea that an employee should not be penalized twice for the same infraction. See, e.g., Gulf States Paper Corp., 97 Lab. Arb. 61, 62 (1991) (Welch, Arb.).  But Zayas's conclusion that a violation of the doctrine occurred here is incorrect.

The most obvious flaw in Zayas's argument is that his broad pronouncements omit a crucial refinement in the application of the doctrine: a second sanction only transgresses industrial double jeopardy principles if the first sanction has become final.

See 1 Bornstein, supra § 15.07[2] (explaining that industrial double jeopardy "applies only to subsequent increases in penalties after a final decision on the merits"); id. (determining applicability of industrial double jeopardy requires arbitrator to "ask whether the initial discipline was, in some sense, final"); Norman Brand, Discipline & Discharge in Arbitration § 2.II.A.5, at 48 (1998) ("Double jeopardy concepts are relevant only when a disciplinary decision is final."); Alan Miles Ruben, Elkouri & Elkouri: How Arbitration Works § 15.3.F.vi, at 982 (6th ed. 2003) (noting that industrial double jeopardy "does not apply where the [initial] discipline is imposed with the understanding that it may not be final").

This refinement erects a hurdle that Zayas cannot clear. The authorities are consentient that when employers suspend employees pending investigation of alleged misconduct, the doctrine of industrial double jeopardy does not bar subsequent discipline. See 1 Bornstein, supra § 15.07[2] (explaining that it "does not constitute double jeopardy to suspend an employee for serious misconduct while conducting an investigation and to later terminate the employee based on the facts disclosed in the investigation"); Ruben, supra § 15.3.F.vi, at 981 ("Double jeopardy does not occur when an employer suspends an employee while conducting an investigation that ultimately leads to the employee's discharge.");

-9-

see also <u>Misco Precision Casting Co.</u>, 40 Lab. Arb. 87, 90 (1962) (Dworkin, Arb.).

The logic behind this consensus is easy to discern. When an employer suspends an employee for the purpose of probing the latter's conduct, neither the employer nor the employee reasonably can believe that the suspension is a final, complete, and conclusive punishment for the suspected infraction. Were the doctrine applied otherwise, an employer would be placed in an untenable position: either take precipitous action (by cashiering the employee without an investigation) or expose itself to further harm (by keeping the employee in place despite his suspected wrongdoing).

Seen in this light, the industrial double jeopardy doctrine affords Zayas no shelter. The arbitrator supportably found that he was suspended while an investigation was carried out into the facts upon which his dismissal was eventually based. Zayas thus suffered two disciplinary actions — suspension and dismissal — but only one final sanction. Under these circumstances, the arbitrator did not manifestly disregard the law in declining to use the doctrine of industrial double jeopardy as a lever to overturn the dismissal.

Zayas has two principal counter-arguments. First, he repeatedly asserts that the arbitral award embodies an "inconsistency" because the arbitrator found his dismissal

justified but his suspension unjustified. This assertion is Pickwickian.

The allegedly schizophrenic quality of the award is fully explained by the arbitrator's differential treatment of the suspension and the discharge. He determined that although Bacardi had failed to prove just cause for the suspension, it had carried that burden with respect to the dismissal (an adverse employment action that was carried out in conformity with a different set of CBA provisions). These were disparate, though related, issues; and the arbitrator's findings are not in any meaningful sense internally inconsistent.

Zayas's second counter-argument revolves around the plaint that neither the arbitrator nor the district court mentioned "industrial double jeopardy" in their respective opinions. This plaint has little to commend it.

Although arbitrators frequently elect to explain their decisions in written opinions, they are under no compulsion to do so. See Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 12 (1st Cir. 2001). It follows, then, that a court may uphold an arbitral award "on grounds or reasoning not employed by the arbitrator himself." Labor Rel'ns Div. of Constr. Indus. v. Int'l Bhd. of Teamsters, Local #379, 29 F.3d 742, 747 (1st Cir. 1994).

The situation is the same with respect to a district court when that court is acting under Rule 56 of the Federal Rules

-11-

of Civil Procedure. Though a district court ordinarily ought to explain the reasoning behind a grant of summary judgment, it is not obliged to do so. See Microfinancial, Inc. v. Premier Holidays Int'l, Inc., 385 F.3d 72, 76 (1st Cir. 2004); cf. Alliance of Auto. Mfrs. v. Gwadowsky, 430 F.3d 30, 34 (1st Cir. 2005) ("Our review is not constrained by the lower court's stated rationale; we may affirm the entry of summary judgment on any ground supported by the record."). Consequently, the failure of the district court to deal explicitly with the doctrine of industrial double jeopardy is not a valid ground for vacating its summary judgment order.

We need go no further. This case is far from close. The arbitral award is rooted in a permissible view of the facts and founded on common sense. Its reasoning is neither palpably faulty nor mistakenly predicated on an insupportable assumption. We therefore conclude that the arbitrator was not guilty of any manifest disregard of the law in formulating the award and that the district court committed no error in disposing of the matter on summary judgment.

**Affirmed**.