ALS & ASSOCIATES, INC., (f/k/a
Southeast Floating Docks,
Inc.), Plaintiff

v.

AGM MARINE CONSTRUCTORS,
INC., Defendant.

Civil Action No. 06–10088–EFH.

United States District Court,
D. Massachusetts.

June 2, 2008.

David G. Hanrahan, Gilman, McLaughlin & Hanrahn, LLP, Boston, MA, Richard D. Vetstein, Mirick O'Connell LLP, Worcester, MA, Rosemary H. Hayes, Tina L. Caraballo, Hayes & Caraballo, PL, Orlando, FL, for Plaintiff.

Charles E. Schaub, Jeremy Ulysses Blackowicz, Hinckley, Allen and Snyder, LLP, Boston, MA, for Defendant.

## ORDER

HARRINGTON, Senior District Judge.

ALS & Associates, Inc., f/k/a Southeast Floating Docks, Inc. (Southeast) asks this Court to vacate an arbitral award in favor of AGM Marine Contractors (AGM) (Docket 1, 30). AGM has filed a cross-motion seeking confirmation of the award (Docket 13). For the reasons set forth below, the Court denies Southeast's motion to vacate the award and grants AGM's motion to confirm it.

The dispute between AGM and Southeast can be summarized briefly. The town of Provincetown hired AGM to install a floating dock system for its MacMillian Pier Project. The docks were manufactured by Southeast. The dock system failed during a December 2003 storm, whereupon a dispute arose between Provincetown, AGM, and Southeast regarding which party was to blame for this failure. Provincetown and AGM eventually reached a settlement. The dispute between AGM and Southeast proceeded to arbitration, resulting in an arbitral award of $389,703 in favor of AGM.

Southeast alleges three bases for vacating the award: the arbitrator's failure to postpone the proceedings, the arbitrator's evident partiality, and the arbitrator's manifest disregard of the law. The parties agree that Southeast's contentions are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, which "provides for expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall St. Assocs. v. Mattel, Inc.,* — U.S. —, 128 S.Ct. 1396, 1400, 170 L.Ed.2d 254 (2008).

Under § 9 of the FAA, a district court must confirm an arbitral award unless the award is vacated pursuant to § 10 or modified or corrected under § 11. Section 10 sets forth several bases for vacatur, two of which are "evident partiality or corruption in the arbitrators," § 10(a)(2), and "misconduct in refusing to postpone the hearing, upon sufficient cause shown." § 10(a)(3).[1]

■ Because "arbitration's essential virtue [is] resolving disputes straightaway," *Hall St.* 128 S.Ct. at 1405, judicial review of an arbitral award is "extremely narrow and exceedingly deferential." *Keebler Co. v. Truck Drivers, Local 170,* 247 F.3d 8, 10 (1st Cir.2001) (quotation omitted). Thus, even if this Court were to conclude that the arbitrator made a "serious error" of law or fact, that alone would not be enough to justify vacatur. *Cytyc Corp. v. DEKA Prods., Ltd. P'ship,* 439 F.3d 27, 32 (1st Cir.2006); *see also Advest, Inc. v. McCarthy,* 914 F.2d 6, 8 (1st Cir.1990) ("Even where such error is painfully clear, courts are not authorized to reconsider the merits of arbitration awards ....") (quotation omitted).

---

1. These correspond to two of Southeast's asserted grounds for vacatur. The third ground advanced by Southeast, manifest disregard of the law, is not based directly upon the statutory language and could be characterized as a federal common law basis for vacatur, *Zayas v. Bacardi Corp.,* 524 F.3d 65 (1st Cir.2008), as a collective label for grounds set forth in § 10, *Hall St. Assocs. v. Mattel, Inc.,* — U.S. —, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008), or as "shorthand for § 10(a)(3) or § 10(a)(4)." *Id.*

A. Failure to Postpone

Southeast contends first that the arbitrator's failure to postpone the arbitration at Southeast's request was highly prejudicial and calls for vacatur. Southeast sought postponement so that it could have more time to obtain documents it had sought from third-parties by means of arbitral subpoenas. Southeast was dissatisfied with these third-parties' responses to the subpoenas and filed separate actions in this Court to secure compliance from two of them, one of which was Provincetown. The arbitrator refused to postpone the hearings to accommodate Southeast's pursuit of the third-party documents.

 In keeping with the profound deference accorded to arbitral decisions, the threshold for vacatur based on a failure to postpone is high. "Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists." *El Dorado Sch. Dist. #15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir.2001) (citation omitted). When a postponement results in the exclusion of evidence, the complaining party must show that the exclusion of this evidence "so affects the rights of [the] party that it may be said that [that party] was deprived of a fair hearing." *Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 497 (1st Cir. 2005) (quotation omitted). The arbitrator may ameliorate unfairness that might otherwise result from the exclusion of evidence through measures such as drawing inferences against the other party. *Id.* at 498. In sum, a party seeking vacatur based on a failure to postpone the proceedings must explain "why a postponement was necessary to assure a fair proceeding." *Local Union No. 251 v. Narragansett Improv. Co.*, 503 F.2d 309, 312 (1st Cir.1974).

 Southeast has not shown that the failure to postpone the arbitration deprived Southeast of a fair hearing. First, Southeast has not sufficiently explained why the documents it had sought were vital to its case. Southeast's arguments regarding the importance of the third-party documents are, to say the least, elliptical. Southeast's interest in the Provincetown documents, for example, appears to have been premised on a vague and unsubstantiated conspiracy between AGM and Provincetown to falsely blame Southeast for the dock failure.

The Court also rejects Southeast's suggestion that "[o]ne needs look no further than the First Circuit's opinions" in Southeast's companion case against Provincetown to see that need for postponement was "blatantly obvious." (Southeast's Motion at 18). The materiality and relevance of the Provincetown documents was not squarely before the First Circuit in the companion case. Rather, the issue in that case was whether Provincetown had substantially complied with this Court's order that Provincetown produce non-privileged documents responsive to Southeast's arbitral subpoena. Thus, the fact that Southeast prevailed twice at the First Circuit has little bearing on whether the arbitrator's decision to proceeding with the arbitration hearing was sound. It also bears mention that the companion case yielded only twelve documents, none of which appear to have been so important that their absence was prejudicial to Southeast's rights (on the contrary, they seem fairly innocuous).

If anything, the fact that the proceedings in the companion case took years to complete[2] only serves to underscore the reasonableness of the arbitrator's decision. Parties opt for arbitration partly because it's faster and less expensive than standard

---

2. The companion case was initiated on May 18, 2005 and was closed on May 19, 2008.

judicial proceedings. The FAA assists these goals via streamlined procedures that facilitate swift judicial review of arbitral awards. Both the goals of arbitration and the purpose animating the FAA's streamlined procedures might, in some cases at least, be ill-served if arbitral proceedings were stalled pending the completion of companion actions in federal court. To put it another way, the arbitrator quite reasonably declined to put the arbitration on hold while Southeast sought documents of questionable materiality.

It is also important to observe that the arbitrator permitted Southeast to "cross-examine, impeach, and argue as to the lack of such evidence and what should be inferred from it, and the reliability of other evidence which may be offered by/from these entities." Southeast has not explained how these measures were inadequate to protect its rights. Cf. *Nat'l Cas. Co.*, 430 F.3d at 498 (remarking that the unfairness to a party that could not obtain documents was offset by the "routine remedy" of drawing inferences against the other party). Further, AGM has contended—and Southeast does not appear to contest—that Southeast had the opportunity to examine the authors of at least some of the documents it was seeking. Finally, the Court notes that the arbitrator appears to have given Southeast's requests due consideration. In light of the foregoing considerations, this Court cannot conclude that the arbitrator engaged in "misconduct in refusing to postpone the hearing." § 10(a)(3).

## B. Evident Partiality

Southeast argues that the arbitral award should be vacated because of the arbitrator's evident partiality towards AGM. Southeast's arguments are based on alleged connections between the arbitrator and AGM and on the manner in which the arbitrator disclosed and investigated (or failed to investigate) possible conflicts of interest. Southeast's contentions are unavailing.

■ "Under the FAA, an arbitral award may be vacated on grounds of 'evident partiality' of the arbitrator[ ]." *JCI Communs., Inc. v. IBEW, Local 103*, 324 F.3d 42, 51 (1st Cir.2003) (*quoting* 9 U.S.C. § 10(a)(2)). "Evident partiality is more than just the appearance of possible bias." *Id.* Rather, evident partiality refers to "a situation in which a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration." *Id.* (quotation omitted). When courts consider whether an arbitrator is evidently partial, they should bear in mind that parties often agree to arbitration "because they prefer a tribunal knowledgeable about the subject matter of their dispute to a generalist court with its austere impartiality but limited knowledge of subject matter." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 679 (7th Cir.1983). Thus, it is to be expected that knowledgeable arbitrators (those familiar with construction disputes, for example) are "more likely than a judge or a juror not only to be precommitted to a particular substantive position but to know or have heard of the parties (or if the parties are organizations, their key people)." *Id.* That being the case, to demonstrate evident partiality it is not enough to identify some remote connection between the arbitrator and one of the parties; again, the standard is whether "a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration." *JCI Communs.*, 324 F.3d at 51 (quotation omitted).

■ In this case, no reasonable person would conclude that the arbitrator was partial to AGM. Southeast's principal arguments in support of its position are based on connections between the arbitrator and

AGM that are so attenuated that to even call them "connections" is probably too strong. For example, Southeast alleges partiality based on the fact that the arbitrator was representing a client in another matter against a party that was represented by an attorney from the law firm of Hinkley Allen & Snyder (HAS), the law firm representing AGM. The HAS attorney representing the party adverse to the arbitrator's client, it should be noted, was not the same as the HAS attorney representing AGM. Southeast does not explain how this "relationship" would give rise to any appearance of impropriety, let alone the "evident partiality" required by the statute.[3] Southeast's other theories of partiality are equally dubious.

Southeast also appears to argue that the arbitrator's alleged failure to investigate and timely disclose possible conflicts gives rise to a free standing basis for vacatur (Southeast Motion at 13).[4] The Court disagrees. It should be noted first that the American Arbitration Association's (AAA) disclosure rules do not govern this case.

*See e.g.,* Merit, 714 F.2d at 680 (noting that the neither the AAA's Commercial Arbitration Rules nor the Code of Ethics for Arbitrators are "a proper starting point for an inquiry into an award's validity" because they "do not have the force of law"). Thus, even if the arbitrator's compliance with these rules was imperfect, as Southeast alleges, these missteps will not warrant vacatur unless they also fall within the one of the grounds set forth in the FAA.[5] The FAA, however, articulates no grounds for vacatur based on failure to investigate or disclose. Accordingly, courts have recognized that "an arbitrator's failure to disclose, in and of itself, provides no basis to vacate an award." *ANR Coal Co., Inc. v. Cogentrix of N. Carolina, Inc.,* 173 F.3d 493, 495 (4th Cir. 1999). It is only when failure to investigate or disclose is linked to evident partiality that vacatur will be warranted. In this case, the Court sees little evidence that the arbitrator failed to meet the arbitral rules, and still less evidence that his actions evince any sort of evident partiality.

**3.** The theory would apparently be that the arbitrator would favor AGM so that the attorney from HAS who was representing the party adverse to the arbitrator's client would somehow do something favorable for the arbitrator's client. Not only would this scenario require malfeasance on the part of the arbitrator, it would require the HAS attorney, who does not represent AGM, to undermine his own client so that AGM could receive some benefit. There is absolutely no support for this far-fetched scenario (or anything resembling it).

**4.** In raising these arguments, Southeast relies in part on Justice Black's plurality opinion in *Commonwealth Coatings Corp. v. Continental Casualty Corp.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), which contains expansive language regarding the requirements to which an arbitrator must adhere. The circuit courts, however, have generally declined to give full weight to Justice Black's opinion because the two concurring justices necessary to secure a majority of the justices (Justices

White and Marshall), joined in a concurring opinion that was more narrow than the plurality opinion. *See Positive Software Solutions, Inc. v. New Century Mortgage Corp.,* 476 F.3d 278, 282 (5th Cir.2007) ("A majority of circuit courts have concluded that Justice White's [concurring] opinion did not lend majority status to the plurality opinion.") (citing cases from five different circuits) (en banc). In any event, the Court concludes that whichever opinion is relied upon, the circumstances in this case do not support Southeast's claim of evident partiality.

**5.** This point is underscored by the Supreme Court's recent arbitration decision, *Hall Street Associates v. Mattel, Inc.,* — U.S. ——, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), which holds that parties cannot expand the grounds for vacatur under the FAA through their contract. *Id.* at 1403. If parties cannot expressly expand the bases for vacatur through contract, they certain cannot do so implicitly by submitting to a particular arbitral forum.

For the foregoing reasons, Southeast's assertion of evident partiality is unavailing.[6]

### C. Manifest Disregard

 Southeast's final asserted basis for vacatur is manifest disregard of the law, a ground that is not found in the FAA. The First Circuit has recently stated that "manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA]." *Ramos–Santiago v. UPS*, 524 F.3d 120, 124 n. 3 (1st Cir.2008) (citing *Hall Street Associates); but see UMass Memorial Medical Center, Inc. v. United Food and Commercial Worker's Union, Local 1445*, 527 F.3d 1, 7 (1st Cir.2008) (stating that courts have inherent powers outside § 10 to vacate arbitral awards). Accordingly, Southeast's claim of manifest disregard fails. Even if manifest disregard remained a valid basis for vacatur, however, Southeast has failed to show that the arbitrator manifestly disregarded the applicable law.

Courts have increasingly encouraged arbitration, for it serves as a less costly and expeditious vehicle for resolving disputes of specialized nature, conducted by an arbiter who possesses expertise in that specialized field.

For the foregoing reasons, the Court denies Southeast's motion to vacate the arbitral award (Docket 30). Moreover, because arbitral awards should be confirmed unless some basis for vacatur or modifica-

tion exists, AGM's motion to confirm the award (Docket 13) is allowed.

SO ORDERED.

---

**6.** In both this case and the companion case against Provincetown, Southeast has displayed an unhelpful penchant for levying poorly supported accusations of impropriety and malfeasance against various individuals and entities involved in these cases. Counsel for Southeast may wish to reconsider this approach. The Court recognizes that a party claiming evident partiality will, by the very nature of the claim, cast the arbitrator in an unfavorable light. The Court also acknowledges that, in the course of litigation, rather pointed accusations are frequently lodged against the opposing party, and even, in some cases, against opposing counsel personally. Nevertheless, at least some of Southeast's aspersions border on the vexatious.