NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1280-22

RAYMOND G. MORISON, JR.,

     Plaintiff-Appellant,

v.

THE WILLINGBORO BOARD
OF EDUCATION and NEW
JERSEY DEPARTMENT OF
EDUCATION, STATE
BOARD OF EXAMINERS,

     Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 28, 2024**
>
> **APPELLATE DIVISION**

Argued March 4, 2024 — Decided March 28, 2024

Before Judges Sabatino, Mawla, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0092-22.

Eric J. Riso argued the cause for appellant (Zeller & Wieliczko, LLP, attorneys; Eric J. Riso, on the briefs).

Lester Everett Taylor argued the cause for respondent The Willingboro Board of Education (Florio Perrucci Steinhardt Cappelli Tipton & Taylor LLC, attorneys; Wade Lawrence Dickey, on the brief).

Sadia Ahsanuddin, Deputy Attorney General, argued the cause for respondent New Jersey Department of

Education, State Board of Examiners (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Sadia Ahsanuddin, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In 2012, the Legislature overhauled the procedures through which tenured public school teachers and administrators in New Jersey, who are charged with improper conduct or other just cause, may be removed or disciplined at the behest of their school district employers. The legislation replaced the elaborate and time-consuming system of administrative hearings for such contested tenure cases with proceedings before an arbitrator. The arbitrator is drawn from a panel of permanent labor arbitrators maintained by the State Commissioner of Education. The arbitrator's decision is reviewable on narrow grounds in the trial court rather than, as before, through the Commissioner's review of an administrative law judge's findings.

The novel issue presented to us is whether, under this revised system, a tenure arbitrator's determination of discipline through the procedures set forth in N.J.S.A. 18A:6-17.1 prevents the State Board of Examiners and Commissioner from imposing a more severe sanction of suspending or revoking the licensee's certificate to teach within this State, under the procedures set forth in N.J.S.A. 18A:6-38 to -39.

2                                                                      A-1280-22

Appellant, a tenured teacher, was charged by the local board of education with unbecoming conduct. The school board sought to terminate his employment in the district. The contested matter was tried before an arbitrator. The arbitrator found appellant had engaged in unbecoming conduct, but she imposed a milder sanction of a one-year suspension. The arbitrator's decision was not challenged in court by either appellant or the school board. The Board of Examiners then pursued the revocation of appellant's license based on his same improper conduct.

Appellant contends the Board of Examiners and the Commissioner—even though they were not parties to the tenure arbitration—have no authority to pursue the revocation of his license because the arbitrator only suspended his employment for one year. Among other things, appellant invokes a doctrine of "industrial double jeopardy" to support his preclusion argument. He also contends the revocation proceedings violate his constitutional and civil rights.

The preclusion claims were presented to a Law Division judge.[1] The judge ruled the State regulators are not precluded by the arbitrator's decision

_____

[1] Although some portions of the briefs and the record designate this as a Chancery Division case, the case has a Law Division docket number.

from seeking to revoke or suspend appellant's teaching certificate. This appeal ensued.

We reject appellant's contentions and affirm. The statewide teacher certificate revocation process authorized in N.J.S.A. 18A:6-38 and -39 operates separately from the teacher tenure arbitration process under N.J.S.A. 18A:6-17.1. The manifest legislative intent is for the two statutes to be administered independently of one another. The proceedings involve non-identical parties, and also different stakes, procedures, and the avenues and standards of appellate review.

The principles argued by appellant, including industrial double jeopardy, cannot tie the hands of the Board of Examiners and Commissioner in ascertaining whether the license of a teacher to work for any school in the State should be revoked or suspended—regardless of whether a tenure arbitrator has imposed a lesser sanction at the district level.

A-1280-22

I.

Before we explore the details of this case, it is useful to discuss the respective frameworks of the two statutory schemes in question: (1) the issuance and revocation of certificates to teach; and (2) the discipline of tenured educators.[2]

A.

Teachers and other specified persons must have a State-issued certificate in order to instruct pupils in a New Jersey public school. The pertinent statute, N.J.S.A. 18A:6-38, prescribes that the Board of Examiners within the State Department of Education "shall issue appropriate certificates to teach or to administer . . . pupils in public schools operated by boards of education and such other certificates as it shall be authorized to issue by law . . . and may revoke the same under rules and regulations prescribed by the State board."

This licensure system is implemented by a series of regulations administered by the Board of Examiners. N.J.A.C. 6A:9B "sets forth the rules governing the licensure of educators or candidates required to be certified [and] also contains the rules delineating the organization of, powers of, duties

_____

[2] Throughout this opinion, we refer variously to "teachers" and "educators," mindful the statutory provisions cover a host of titles of persons who work in schools, such as school nurses, principals, and other administrators and staff. See N.J.S.A. 18A:6-38. To the extent pertinent, we include those additional job categories in our discussion.

of, and proceedings before the State Board of Examiners." N.J.A.C. 6A:9B-1.1. Pursuant to N.J.A.C. 6A:9B-3.2(a), the Board of Examiners "shall: (1) Issue appropriate certificates to teach . . . students in public schools and all other certificates as the Board of Examiners is authorized to issue by law; [and] (2) Revoke or suspend certificates issued, pursuant to N.J.A.C. 6A:9B–4.4."

The authority to revoke an educator's certificate is delegated by statute to the Board of Examiners in N.J.S.A. 18A:6-38.1, subject to regulations promulgated by the Commissioner. Within those regulations, N.J.A.C. 6A:9B-4.4(a) provides that the Board of Examiners "may revoke or suspend the certificate(s) of any certificate holder on the basis of demonstrated inefficiency, incapacity, conduct unbecoming a teacher, or other just cause."

The regulations further specify in N.J.A.C. 6A:9B-4.4(c) that the Board of Examiners "shall not revoke or suspend a certificate without providing the certificate holder an opportunity to be heard, pursuant to N.J.A.C. 6A:9B-4.5." To launch the process, the Board of Examiners "may issue an order to show cause to a certificate holder if the Board of Examiners determines the conduct of the holder warrants the revocation or suspension of the certificate(s) held," where one or more of ten enumerated circumstances is present. N.J.A.C. 6A:9B-4.5(a)(1) to (10). Further, N.J.A.C. 6A:9B-4.5(b) provides that

6

"[n]othing in this section shall preclude the Board of Examiners from issuing an order to show cause on its own initiative when the Board of Examiners determines grounds for revocation or suspension of a certificate may exist."

N.J.A.C. 6A:9B-4.6 outlines the procedures the Board of Examiners must follow in taking action against an educator. Upon receiving a referral, the Board of Examiners "shall determine by public vote whether to initiate action against the certificate holder." N.J.A.C. 6A:9B-4.6(a). The certificate holder has thirty days in which to file an answer to the allegations. N.J.A.C. 6A:9B-4.6(c).

If an answer is filed and material facts are in dispute, "the Board of Examiners shall either hear the matter directly or transmit it to the Office of Administrative Law ["OAL"] for a hearing" before an administrative law judge ("ALJ"). N.J.A.C. 6A:9B-4.6(d). The OAL hearing shall adhere to the procedures prescribed by the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31, and the associated uniform rules, N.J.A.C. 1:1. Alternatively, if an answer is filed and no material facts are in dispute, the certificate holder must be offered an opportunity to file briefs and other written submissions with the Board of Examiners. N.J.A.C. 6A:9B-4.6(e).

After the OAL transmits a post-hearing decision or the matter is considered on the papers without a hearing, the Board of Examiners issues a

decision about whether to revoke or suspend the educator's certificate. The Board of Examiners must "clearly articulate the findings of fact upon which its decision was based." N.J.A.C. 6A:9B-4.6(h).

By statute, as revised in 2008, the decision of the Board of Examiners may be appealed administratively to the Commissioner of Education.[3] In turn, the Commissioner's ruling shall be deemed a "final agency action" and appealable "directly to the Appellate Division." N.J.S.A. 18A:6-38.4; see also R. 2:2-3(a)(2).

In reviewing appeals from the Board of Examiners, the Commissioner is guided by a standard of review comparable to the one used by this court in reviewing agency decisions. The Commissioner must assess "whether the decision is supported by sufficient credible evidence in the record." N.J.A.C. 6A:4-4.1(a). The Commissioner "shall not disturb the decision unless the appellant has demonstrated the State Board of Examiners . . . acted in a manner that was arbitrary, capricious, or contrary to law." Ibid.

Except for the 2008 amendment omitting the step of review by the State Board of Education, these procedures for the revocation or suspension of an educator's certificate essentially have been in place for decades. The Board of

---

[3] The 2008 amendment removed the necessity to appeal the Commissioner's decision to the State Board of Education. L. 2008, c. 36, §2; see also N.J.A.C. 6A:4-1.1 (explaining this change in procedures).

Examiners, overseen by the Commissioner, has plenary authority over such matters, including ascertaining whether the educator has engaged in conduct that warrants such a regulatory sanction.

B.

The procedures by which a local board of education may take disciplinary action against a tenured employee are quite different, particularly after the 2012 statutory overhaul. The history of the tenure statute recently was traced extensively by Justice Solomon in Sanjuan v. Sch. Dist. of W. N.Y., ___ N.J.___, ___ (2024) (slip op. at 19-20) (holding that, under the current version of the statute, an arbitrator's authority to impose penalties is not limited to dismissal or a reduction in salary).

In 1967, the Legislature enacted the Tenure Employees Hearing Law ("TEHL"), N.J.S.A. 18A:6-10 to -18.1, to replace the previous Tenure Employees Hearing Act. Id. at ___ (slip op. at 10) (citing L. 1967, c. 271). "The TEHL originally provided that if the Commissioner of Education determined that a tenure charge was 'sufficient to warrant dismissal or reduction in salary of the person charged,' then the Commissioner would conduct a hearing." Ibid. (quoting N.J.S.A. 18A:6-16). "In 1998, the Legislature amended the statute to mandate a hearing before an [ALJ] if the Commissioner deemed the charges sufficient. L. 1998, c. 42, § 2." Ibid.

The ALJ's decision was then reviewable by the Commissioner. After that, the tenure case was reviewable by the State Board of Education (until that last step was omitted by statute in 2008) and then directly appealable to the Appellate Division. See, e.g., In re Young, 202 N.J. 50, 56-62 (2010) (illustratively involving a board of education's removal case against a tenured teacher that was tried before an ALJ, and then reviewed by the Commissioner, the Appellate Division, and ultimately the Supreme Court); Matter of Tenure Hearing of Cowan, 224 N.J. Super. 737, 740 (App. Div. 1988) (similarly entailing a hearing before an ALJ, review of the ALJ's decision by the Commissioner and (before 2008) the State Board of Education, and then direct review by the Appellate Division).

The Legislature eventually recognized this sequence of proceedings for tenure cases was unduly protracted and inefficient. Consequently, in 2012, the Legislature substantially changed the process by substituting arbitration for OAL hearings, and through other major revisions. See L. 2012, c. 26, §22, known as the Teacher Effectiveness and Accountability for Children of New Jersey Act ("TEACHNJ").

"Today, '[p]ursuant to TEACHNJ, the agency review process no longer exists,' and instead, contested cases must be submitted to arbitration." Sanjuan, ___ N.J. at ___ (slip op. at 11) (alteration in original) (citation

10

omitted) (quoting <u>Pugliese v. State-Operated Sch. Dist. of Newark</u>, 440 N.J. Super. 501, 510 (App. Div. 2015)).  As the Sponsors' Statement to the bill described this procedural change, "[t]hese contested cases will no longer be referred to [ALJs], and the final determination on the case will no longer be made by the Commissioner of Education."  <u>Id.</u> at __ (slip op. at 12) (second alteration in original) (quoting <u>Sponsors' Statement to A. 3060</u> (June 14, 2012)).

Under this post-2012 system,[4] an arbitrator is selected from a panel of fifty permanent labor arbitrators maintained by the State Commissioner of Education.  N.J.S.A. 18A:6-17.1(a).  The arbitration must adhere to strict timelines.  N.J.S.A. 18A:6-17.1(b) and (f).  In presiding over the case, the arbitrator must apply the labor arbitration rules of the American Arbitration Association ("AAA").  N.J.S.A. 18A:6-17.1(c).  The arbitrator is required to render a decision within forty-five days of the start of the hearing.  N.J.S.A. 18A:6-17.1(d).

In contrast to the former tenure case process involving administrative agency review, the arbitrator's decision "shall be final and binding and may not be appealable to the [C]ommissioner or the State Board of Education."

---

[4] The statute was revised again in 2015, 2019, and 2021 to address arbitrator training and other aspects not germane to the issues before us.  <u>See</u> <u>L.</u> 2015, <u>c.</u> 109, § 1; <u>L.</u> 2019, c. 45, §1; <u>L.</u> 2021, <u>c.</u> 51, § 1.

N.J.S.A. 18A:6-17.1(e). Instead, the decision "shall be subject to judicial review and enforcement as provided pursuant to N.J.S.[A.] 2A:24-7 through N.J.S.[A.] 2A:24-10" (collectively, the New Jersey Arbitration Act (the "Arbitration Act")). Ibid. Such judicial review is conducted in the first instance in a trial division of the Superior Court, not in the Appellate Division. N.J.S.A. 2A:24-7. See, e.g., Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 11-12 (2017) (detailing the post-2012 procedures); Luskey v. Carteret Bd. of Educ., 459 N.J. Super. 150, 154 (App. Div. 2019) (similarly illustrating the process). The trial court may confirm the arbitration award, vacate, modify, or correct it. N.J.S.A. 2A:24-7.

The grounds for setting aside a tenure case arbitrator's decision under the Arbitration Act are narrow. As the Supreme Court noted in Bound Brook, the court can only vacate the decision if one of four statutory grounds is demonstrated:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;

12

d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[228 N.J. at 12 (citing N.J.S.A. 2A:24–8); see also Sanjuan, ___ N.J at ___ (slip op. at 14).]

The trial court's decision as to whether any of these grounds pertain is then reviewable by this court. R. 2:2-3(a)(1).

Under these revised post-2012 procedures, the Commissioner still performs a limited role in tenured teacher discipline cases. That role consists of a screening function when a board of education seeks to initiate such disciplinary proceedings.

Specifically, the process begins when a complainant charges a tenured employee with one of the grounds for dismissal or a reduction in compensation, as set forth in N.J.S.A. 18A:6-10, i.e., "inefficiency, incapacity, unbecoming conduct, or other just cause." The charges must be filed with the appropriate board of education and served by the board on the employee. N.J.S.A. 18A:6-11. If the school board finds probable cause supporting the charges, and that the charges, if credited, are sufficient to warrant a dismissal or a reduction in salary, then it must forward the charges to the Commissioner. Ibid. After reviewing the charges and any written responses by the employee, the Commissioner must decide whether the charges are "sufficient to warrant

13

dismissal or reduction in salary." N.J.S.A. 18A:6-16. If they are, the Commissioner must refer the charges to an arbitrator; if they are not, the Commissioner must dismiss the case. Ibid. From that point forward, the Commissioner is not involved, and the arbitration process we have described above takes place. See also Sanjuan, ___ N.J at ___ (slip op. at 15-16).

## II.

Having outlined these two distinct statutory processes, we turn to the procedural setting of this case.

Appellant Raymond G. Morison, Jr. is a tenured physical education teacher employed by respondent Willingboro Board of Education ("the School Board"). In November 2020, the School Board filed tenure charges against Morison, alleging "conduct unbecoming a teaching staff member, . . . violation of Board policy and/or other just cause warranting dismissal and reduction in salary."[5]

After the tenure charges were certified, the Commissioner appointed an arbitrator. The arbitrator presided over a hearing in March 2021 and heard the testimony of several witnesses.

On April 29, 2021, the arbitrator issued an arbitration award and

---

[5] Because the specifics of the charges are irrelevant to our analysis of the legal issues, we need not detail them.

decision. She found that Morison had "engage[d] in conduct unbecoming a tenured teacher." Nevertheless, the arbitrator concluded that "while [Morison's] conduct was improper, removal from his position and loss of tenure [wa]s not the appropriate penalty." Instead, the arbitrator ordered Morison "suspended without pay for the entire 2020-2021 school year," before being allowed to return to his position upon certain conditions.

Neither Morison nor the School Board challenged the arbitrator's findings, nor the sanction of a one-year suspension. The award is therefore now final as between those parties to the arbitration. Policeman's Benevolent Ass'n, Local 292 v. Borough of North Haledon, 158 N.J. 392, 398-99, 401-02 (1999) (noting a party's right to seek judicial confirmation of the arbitration award within three months as specified by the Arbitration Act, and thereafter via a common law plenary action).

In November 2021, the Board of Examiners initiated the process to take its own measures against Morison. It issued an Order to Show Cause as to "why the teaching certificate(s) issued to [Morison] should not be revoked or suspended." The Order to Show Cause was based on "the level and nature" of Morison's "unbecoming conduct" in the incidents that supported the tenure charges against Morison. The Order to Show Cause referred to and attached, by reference, the arbitrator's decision.

15

In January 2022, Morison filed a complaint in the Law Division against the Board of Examiners and School Board. The complaint was styled as a summary action seeking several forms of relief. First, the complaint sought to confirm the arbitrator's award. Second, it sought a declaration that the Board of Examiners' certificate revocation proceedings violated Morison's substantive due process and civil rights, and his right to "be free from double jeopardy." The complaint demanded that the arbitrator's decision be afforded "preclusive effect." As Morison later elaborated, he contended the one-year suspension from employment imposed by the arbitrator demarcates the outer limit of any sanction he can receive for his proven unbecoming conduct.

In response, the Board of Examiners and the School Board asserted that the arbitrator's decision does not legally preclude the Board of Examiners from seeking to revoke or suspend Morison's teaching certificates. Respondents have not opposed the court confirming the award, so long as the court does not restrict the Board of Examiners from pursuing its own regulatory measures against Morison. They asked the trial court to dismiss Morison's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

After considering these arguments, Judge Ronald E. Bookbinder agreed with respondents and rejected Morison's claims of preclusion. In an order

16

dated November 18, 2022, the judge confirmed the arbitration award but granted dismissal as to all other relief requested by Morison's complaint. In his related oral opinion, the judge concluded the court lacked subject matter jurisdiction over the Board of Examiners and its proceedings.

Morison appeals. Again, he does not contest the arbitrator's findings of unbecoming conduct. Rather, he argues the Board of Examiners must be barred from taking action to revoke or suspend his teaching certificates under N.J.S.A. 18A:6-38.1 and N.J.A.C. 6A:9B. He contends such proceedings, in the wake of the arbitrator's imposition of a one-year suspension of his employment, violate his constitutional rights of substantive due process. He further asserts the revocation or suspension of his teaching license would violate principles of what has been described as industrial double jeopardy.

Because appellant's arguments for preclusion fundamentally concern issues of law, we review them de novo. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

III.

We begin our analysis with a recognition that general principles of claim preclusion and issue preclusion do not prevent the Board of Examiners from pursuing regulatory action against Morison because of the earlier arbitration

17

proceeding. Obviously, the Board of Examiners was not a party to the arbitration. Appellant has not cited any rule or authority that would have enabled the Board of Examiners to intervene or participate in the arbitration, even if it wanted to do so. In addition, the School Board is not a party to the certificate proceedings being pursued by the Board of Examiners, nor is there any rule or authority allowing its participation.

Because there is no identity of parties, the doctrines of collateral estoppel and res judicata do not bind the Board of Examiners. See Velasquez v. Franz, 123 N.J. 498, 505-06 (1991) (claim preclusion under res judicata generally requires, among other things, identity of the parties or their privies in the earlier proceeding); Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (issue preclusion under collateral estoppel generally requires, among other things, the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding). The Board of Examiners, a state regulatory body, is neither the same entity, nor in privity with, the Willingboro Board of Education, an agency of local government.[6]

---

[6] Because Morison does not contest the use of the arbitrator's decision, we are not presented with the question of whether the concept of "offensive" or "non-mutual" collateral estoppel would prevent the previous non-party Board of Examiners from relying on an arbitrator's decision in taking action against a licensee who lost the arbitration. See Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 165-66 (App. Div. 1988) (explaining the concept of offensive

As our foregoing comparative discussion in Part I shows, the statutory processes to revoke or suspend an educator's certificate under N.J.S.A. 18A:6-38, and to discipline a tenured educator under TEACHNJ, N.J.S.A 18A:6-10 to -18.1, are distinct and dissimilar. Although the subject matters in both proceedings involve appellant's unbecoming conduct, the stakes are different. The tenure case encompassed only appellant's employment status in the school district, whereas the certificate proceedings concern appellant's ability to teach at any public school in the state.

Further, as we have detailed, both processes have major differences. The arbitration is conducted under the AAA rules; the certificate proceedings are conducted under the OAL rules for administrative proceedings. The trier of fact in the arbitration is an individual drawn from a list of arbitrators; the trier of fact in the certificate case is an ALJ, a public official appointed by the Governor with the advice and consent of the Senate.

As we have noted, the arbitration award can only be reviewed by the trial court, whereas the ALJ's decision is reviewable by the Board of Examiners and the Commissioner. The standards of review under the Arbitration Act differ from those applicable to final decisions of state

_____

collateral estoppel); Restatement (Second) of Judgments §29 (Am. Law Inst. 1982).

administrative agencies. The trial court has no jurisdiction to review the agency's decision, which instead must be filed directly in the Appellate Division.

The initial screening of the proposed tenure charges by the Commissioner does not alter the preclusion analysis or intermingle the statutory schemes. As we have explained, the Commissioner simply assesses, before any hearings are held, whether charges appear to be sufficient on their face to be tried before an arbitrator and are of potential severity to warrant removal, a pay reduction, or other employer sanctions. Sanjuan, ___ N.J. at ___ (slip op. at 15-16). The Commissioner has no say in the degree of discipline the arbitrator chooses to mete out if the charges are proven in that forum.

We reject appellant's contention that these separate processes violate constitutional principles of due process. He argues the Board of Examiners' attempt to revoke or suspend his certificate, after the tenure case has been arbitrated, unconstitutionally transgresses his fundamental interest in his continued employment as a teacher. He demonstrates no such constitutional violation.

Appellant has clarified that he is not alleging a violation of principles of procedural due process. Nor could he. The concept of procedural due process

20

assures that the government will not deprive citizens of certain rights without notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Greenberg v. Kimmelman, 99 N.J. 552, 568 (1985). Here, the Board of Examiners has duly provided appellant with formal written notice of the charges against him. He will have "an opportunity to be heard" at an administrative hearing as prescribed by the procedures in N.J.A.C. 6A:9B, followed by several levels of available appellate review. See Hosp. Ctr. at Orange v. Guhl, 331 N.J. Super. 322, 340-41 (App. Div. 2000) (explaining that "[w]hen a state affords a full judicial mechanism with which to challenge the administrative decision in question, the state provides adequate procedural due process, . . . whether or not the plaintiff avails [themselves] of the provided appeal mechanism") (quoting DeBlasio v. Zoning Bd. of Adjustment of W. Amwell, 53 F.3d 592, 597 (3d Cir. 2000) (alterations in original)).

Nor does the Board of Examiners' case violate principles of substantive due process, as appellant contends. "Substantive due process doctrine does not protect an individual from all government action that might infringe [that person's] liberty in violation of a law." In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6, 465 N.J. Super. 111, 155 (App. Div. 2020). "Instead, it 'is reserved for the most egregious governmental abuses against liberty or property rights, abuses that "shock the conscience or otherwise offend . . .

21

judicial notions of fairness . . . [and that are] offensive to human dignity."'" Ibid. (alterations in original) (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 366 (1996)).

The separate regulatory action of the Board of Examiners with respect to appellant's continued ability to serve as a teacher within this state does not amount to "an egregious governmental abuse" nor does it "shock the conscience." Nor does it offend "judicial notions of fairness" or "human dignity." The Board is lawfully acting to carry out its responsibility to protect schoolchildren from improper teacher conduct, and thereby promote their own ability to receive a public education under our laws. See, e.g., N.J. Const. art. VIII, § IV, ¶ 1. The statutory licensure system for teachers embodied in N.J.S.A. 18A:6-38 and 38.1 has a clearly rational foundation, and its co-existence with the teacher tenure laws is complementary, not deleterious.

We also reject appellant's invocation of what has been termed in a few cases from other jurisdictions and labor law publications as a principle of industrial double jeopardy. Appellant does not cite to or rest upon the Double Jeopardy Clauses of the United States and New Jersey Constitutions, see U.S. Const. amend. V; and N.J. Const. art. I, ¶ 11, which generally focus upon punishments that follow the conviction of a criminal offense. Instead, appellant relies upon a civil analogy, characterizing the possible revocation or

suspension of his license as an unfair additional punishment for his proven unbecoming behavior. He asserts the State cannot as such engage in industrial double jeopardy "by essentially seeking to punish him twice for the same conduct."

The doctrine of industrial double jeopardy has not been adopted in New Jersey case law. We discern no reason to endorse or apply it here.[7]

Morison relies on opinions from the United States Court of Appeals for the First Circuit, the Massachusetts Appeals Court, and an unpublished Delaware state court case,[8] which have referred to the concept of industrial double jeopardy. Those citations are unpersuasive and inapposite.

In Zayas v. Bacardi Corporation, the First Circuit noted that "[t]he phrase 'industrial double jeopardy' refers to one of a family of concepts that fall under the rubric of industrial due process." 524 F.3d 65, 68 (1st Cir. 2008) (citing 1 Tim Bornstein et al., Lab. & Emp. Arb. § 15.01 (2d ed.1997); Ray J. Schoonhoven, Fairweather's Prac. & Proc. in Lab. Arb. § 13, at 374 (4th

---

[7]  We previously noted an assertion of industrial double jeopardy in Yarborough v. State Operated School District of City of Newark, 455 N.J. Super. 136, 144 (App. Div. 2018), but declined to address it because the plaintiff had failed to raise the argument before filing his appeal.

[8]  In compliance with Rule 1:36-3, we decline to cite or discuss the unpublished Delaware opinion.

ed.1999)). "In the arbitral context, these protections are not normally of constitutional dimension. Rather, when an arbitrator refers to double jeopardy or some similar due process concept, [the arbitrator] generally has imported that concept into a [Collective Bargaining Agreement]." Ibid. "The impetus is that such an importation is intrinsic to the notion of just cause or otherwise implicit in the labor contract." Id. at 68-69 (citing 1 Bornstein, § 15.03; Schoonhoven, § 13, at 373). "This borrowing does not mean, however, that the borrowed concepts play out identically in the constitutional and industrial spheres. The concept of industrial double jeopardy, for example, is usually considered weaker and narrower than its constitutional counterpart." Id. at 69 (citing Schoonhoven, § 13.VIII, at 417-18).

In Zayas, the federal court observed that "[t]he doctrine of industrial double jeopardy enshrines the idea that an employee should not be penalized twice for the same infraction." Ibid. This principle was unavailing to the employee in Zayas, however. The employee was a labor union member who had been temporarily suspended without pay by his employer while it investigated charges that he had falsified records. Id. at 66-67. After he served that temporary suspension, an arbitrator substantiated the charges and authorized the employer to terminate him. Id. at 67. The employee challenged the termination, arguing that the employer could not impose a greater sanction

24

upon him than the earlier temporary suspension.  Ibid.  The First Circuit rejected that argument, noting that "[t]he authorities are consistent that when employers suspend employees pending investigation of alleged misconduct, the doctrine of industrial double jeopardy does not bar subsequent discipline." Id. at 69 (emphasis added).

The other published judicial opinion cited by appellant likewise involved an employer imposing additional discipline upon an employee.  In City of Springfield v. United Public Service Employees Union, the Massachusetts Court of Appeals principally addressed "whether an arbitrator exceeded her authority when she ordered a terminated employee reinstated without loss of pay or other rights, even though she found that he had engaged in conduct amounting to sexual harassment."  47 N.E.3d 447, 449 (Mass. App. Ct. 2016). As a subsidiary question, the court considered whether the employer could nonetheless require the reinstated employee to receive sexual harassment training.  Id. at 451.  Citing Zayas, the court stated that the employer's authority to impose an additional suspension, loss of pay, or loss of other employment rights would violate "industrial double jeopardy" provisions, but that the employer was not precluded by the arbitration award from requiring other remedial measures such as training and counseling.  Id. at 453 (citing

25

524 F.3d at 69). But here again, the factual context was whether the worker's employer could impose additional sanctions upon its employee.

Not so here. Even if the doctrine of industrial double jeopardy were adopted as the law of this state, it would not aid Morison in this particular setting. That is because the Board of Examiners is not his employer. His employer, the School Board, obtained through the arbitration process a one-year suspension of his employment in the school district. The Board of Education has not brought any other litigation or imposed any other sanctions upon him.

In a similar vein, Morison cites to Township of Moorestown v. Armstrong, an employment case that recognized the employee in question "cannot be punished twice for the same offense." 89 N.J. Super. 560, 567 (App. Div. 1965). That case involved an employer that removed an employee based on ten separate instances of improper conduct. Id. at 562-64. The Civil Service Commission upheld nine of the charges, but it reduced the sanction to a six-month suspension without pay. Id. at 564. On appeal, we concluded the Commission misapplied its discretion and reversed, reinstating the dismissal. Id. at 566-67. We noted that one of the ten charges had already been punished by the employer with a five-day suspension, which the employer was not

26

entitled to increase but which could be considered as a past record of misconduct in sanctioning the rest of the offenses. Id. at 567.

The situation here plainly differs from Moorestown because the regulatory action of the Board of Examiners is not a second sanction being imposed by the same employer. Instead, it is a licensure matter being pursued by a regulatory agency. By analogy, the Supreme Court is not precluded from suspending or disbarring an attorney from the practice of law after a tribunal finds the lawyer was appropriately fired or disciplined by the attorney's employer concerning the same improper conduct.

In sum, Morison presents no valid constitutional or other legal grounds to enjoin the Board of Examiners' proceedings to revoke or suspend his certificate. Lacking such support, he has no viable claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2. See Desanctis v. Borough of Belmar, 455 N.J. Super. 316, 333 (App. Div. 2018) (citing Harz v. Borough of Spring Lake, 234 N.J. 317, 331 (2018)).

To the extent we have not discussed them, all remaining points raised by appellant lack sufficient merit to discuss in this opinion. R. 2:11-3(e)(1)(E). The action by the Board of Examiners may proceed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-1280-22